64 So.3d 1246 (2011)
Linda CRAWFORD, Petitioner,
v.
Jannie BARKER, etc., Respondent.
No. SC09-1969.
Supreme Court of Florida.
June 9, 2011.
*1248 James L. Weintraub, Boca Raton, FL, for Petitioner.
Thomas F. Pepe of Pepe and Nemire, P.A., Coral Gables, FL, for Respondent.
PARIENTE, J.
Linda Crawford seeks review of the decision of the Third District Court of Appeal in Barker v. Crawford, 16 So.3d 901 (Fla. 3d DCA 2009), on the ground that it expressly and directly conflicts with a decision of the Fifth District Court of Appeal in Smith v. Smith, 919 So.2d 525 (Fla. 5th DCA 2005). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. The conflict issue, which is one of contract interpretation, is whether language in a marital settlement agreement, which specifically refers to a beneficiary-designated policy, plan, or account (such as a deferred compensation fund or life insurance policy), but does not state who is or is not to receive the death benefits and does not specify the beneficiary, trumps the predissolution beneficiary designation on the policy, plan, or account.
For the reasons explained below, we hold that absent the marital settlement agreement providing who is or is not to receive the death benefits or specifying who is to be the beneficiary, courts should look no further than the named beneficiary in the separate document of the policy, plan, or account. General language in a marital settlement agreement, such as language stating who is to receive ownership, is not specific enough to override the plain language of the beneficiary designation in the separate document. The spouse, who owns the policy, plan, or account following the dissolution of marriage, is otherwise free to name any individual as the beneficiary; however, if the spouse does not change the beneficiary, the beneficiary designation in the separate document controls. Accordingly, we quash the Third District's decision below and approve the Fifth District's decision in Smith.

FACTS
Manuel Crawford and Linda Crawford were married in 1984. In 1993, Manuel opened a deferred compensation fund and listed Linda as the beneficiary. Then in August 2005, Manuel filed for divorce. During the divorce proceedings, Manuel was represented by an attorney, but Linda was not. The circuit court referred the parties to mediation. At mediation, the parties reached an agreement as to the distribution of their assets, including Manuel's pension plan, deferred compensation fund, and annuity. The issue in this case pertains only to the death benefits of the deferred compensation fund. The signed Amended Family Mediation Unit Agreement provided in relevant part: "Husband shall retain retirement money with the Town of Surfside and the Deferred Compensation Fund f/ka/ [sic] Pepsco."
The agreement also provided that the husband "shall retain annuity with Pacific Life." The agreement did not contain a general waiver provision or any other provision referencing the pension, annuity, or the deferred compensation fund at issue in this case.
Manuel Crawford died approximately one year after the divorce was final. Prior to his death, he did not change the named beneficiary on the deferred compensation fund. His daughter, Jannie Barker, was appointed as personal representative of his estate. Barker filed an emergency motion for civil enforcement of the final judgment in the family law division of the circuit *1249 court.[1] Specifically, she asserted that Linda Crawford had failed to comply with the final judgment because Linda made claims on property given to Manuel in the divorce proceedings, including retirement money. The circuit court referred the matter to a general magistrate.
The general magistrate held hearings but did not take evidence. During the hearing, the magistrate called the Town of Surfside human resources department, which indicated that the Town of Surfside pension plan had been paid to Barker.[2] Prior to and at the hearings, the parties reached an agreement on all of the disputed property except for the deferred compensation fund with Nationwide Retirement Solutions at issue in this case, which the record indicated is the deferred compensation fund referred to in the agreement. The stipulation provided that Barker waived any claim to the Pacific Life annuity account and that those proceeds would be distributed to Linda Crawford as the listed beneficiary.
Following the hearings, the general master filed a report and recommendation finding that the death benefits of the deferred compensation fund with Nationwide Retirement Solutions should be paid to Jannie Barker, not Linda Crawford. The general magistrate found as follows:
5. The amended mediated settlement agreement that is incorporated into the final judgment of dissolution of marriage between the parties provides that "Husband shall retain retirement money with... the Deferred Compensation Fund f/ka/ [sic] Pepsco." The Deferred Compensation Fund with Pepsco is one and the same as the Deferred Compensation Fund with Nationwide Retirement Solutions which fund is at issue in this case.
6. During the course of the marriage, "Linda Crawfordwife" was named as the designated beneficiary of the Deferred Compensation Fund. However, Linda Crawford and Manuel R. Crawford agreed at the time of the signing of the amended mediated settlement agreement that Manuel R. Crawford should get the money from this fund and that he should be the beneficiary. Manuel R. Crawford could have reaffirmed the designation of Linda Crawford had he chosen to do so following the dissolution of marriage. The fact that he did not reaffirm Linda Crawford as the beneficiary of this account confirms his intent that he was the beneficiary of this fund and that the money from the fund remained his at all times following the dissolution.
The general magistrate ordered Linda Crawford to "execute all documents required by the Deferred Compensation Fund and Nationwide Retirement Solutions (`Nationwide') for the transfer of the Fund, held by Nationwide in the name of Manuel R. Crawford, to the Estate of Manuel R. Crawford."
Linda Crawford filed exceptions to the general magistrate's report and recommendation. She argued that no reference was made in the settlement agreement with regard to the disposition of her expectancy interests or her beneficiary rights. Thus, she contended, under this Court's decision in Cooper v. Muccitelli (Cooper II), 682 So.2d 77 (Fla.1996), and the Fifth District's decision in Smith v. Smith, 919 So.2d 525 (Fla. 5th DCA 2005), in the absence of specific reference in the agreement to the proceeds (or death benefits), *1250 the recipient is determined by looking only to the designated beneficiary.
The circuit court sustained Linda Crawford's exceptions to the general magistrate's report. The circuit court's order stated: "This Court finds that no reference was made in the Amended Family Mediation Unit Agreement incorporated by reference into the Final Judgment of Dissolution of Marriage to the Respondent's beneficiary rights to the proceeds of the subject deferred compensation account." Accordingly, the circuit court ordered that Linda Crawford, as the designated beneficiary, was entitled to the proceeds of the deferred compensation fund.
Barker appealed the circuit court's order to the Third District Court of Appeal. The Third District reversed the circuit court, agreeing instead with the general magistrate. The Third District's opinion states in its entirety:
We summarily reverse the trial court's "Order on Respondent's Exceptions to General Master's Report and Recommendations" insofar as it states, "This Court finds that no reference was made in the Amended Family Mediation Unit Agreement incorporated by reference into the Final Judgment of Dissolution of Marriage to the Respondent's beneficiary rights to the proceeds of the subject deferred compensation account." Instead, we conclude, based upon de novo review, the general master correctly construed the statement in the Amended (Short Form) Family Mediation Unit Agreement that "Husband shall retain retirement money with the Town of Surfside and the Deferred Compensation Fund f/k/a Pepsco," was sufficient to waive the former husband's pre-dissolution designation of the former wife as a beneficiary.
On this point, the general magistrate stated in his report and recommendation:
During the course of the marriage, "Linda Crawfordwife" was named as the designated beneficiary of the Deferred Compensation Fund. However, Linda Crawford and Manuel R. Crawford agreed at the time of the signing of the amended mediated settlement agreement that Manuel R. Crawford should get the money from this fund and that he should be the beneficiary. Manuel R. Crawford could have reaffirmed the designation of Linda Crawford had he chosen to do so following the dissolution of marriage. The fact that he did not reaffirm Linda Crawford as the beneficiary of this account confirms his intent that he was the beneficiary of this fund and that the money from the fund remained his at all times following the dissolution.
We conclude the general master's analysis is the legally correct one. See Cooper v. Muccitelli, 682 So.2d 77 (Fla. 1996); Smith v. Smith, 919 So.2d 525 (Fla. 5th DCA 2005).
Reversed and remanded.
Barker v. Crawford, 16 So.3d 901, 901-02 (Fla. 3d DCA 2009). Linda Crawford sought review by this Court.

ANALYSIS
The conflict issue involved in this case is whether language in a marital settlement agreement, which specifically refers to a beneficiary-designated policy, plan, or account, such as a deferred compensation fund, but does not state who is or is not to receive the death benefits and does not specify the beneficiary, trumps the predissolution beneficiary designation in the separate document. The issue in this case is one of contract interpretation *1251 and does not involve nuances of family law or a claim that the Employee Retirement Income Security Act of 1974 (ERISA) preempts state law in this case.[3] A marital settlement agreement is a contract. Levitt v. Levitt, 699 So.2d 755, 756 (Fla. 4th DCA 1997) ("It is well settled that a marital settlement agreement is subject to interpretation like any other contract."); see also Cerniglia v. Cerniglia, 679 So.2d 1160, 1164 (Fla.1996) (evaluating a release contained within a marital settlement agreement under traditional contract principles). Likewise, the deferred compensation fund is a contract with the company administering the fund (here, Nationwide Retirement Solutions), and the designation of the beneficiary is a term of that contract. A deferred compensation fund "consists of funds already earned but for which payment is deferred. For equitable distribution purposes, a deferred compensation account is considered marital property to the extent it consists of contributions from funds earned during the marriage." Ruberg v. Ruberg, 858 So.2d 1147, 1152 (Fla. 2d DCA 2003).
Our review of this case is de novo. See O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd., 944 So.2d 181, 185 (Fla.2006). The magistrate did not make credibility determinations. Thus, we are on an equal footing with the magistrate to interpret the written documents. See Muir v. Muir, 925 So.2d 356, 358 (Fla. 5th DCA 2006) ("Interpretation of a marital settlement agreement is a matter of law and places the appellate court on an equal footing with the trial court as interpreter of the written document.").
In resolving the conflict issue, we will first examine this Court's decision in Cooper II, which sets the stage for resolution of issues involving marital settlement agreements and beneficiary-designated policies, plans, or accounts. Next, we will discuss the district courts of appeal decisions addressing the issue, including the conflict decision of Smith v. Smith, 919 So.2d 525 (Fla. 5th DCA 2005). Then, we will discuss why we hold that general language, such as a statement of who is to receive ownership of the policy, plan, or account, is not specific enough to override the plain language of a beneficiary designation in the separate document. Finally, we will apply the law to this case.

This Court's Decision in Cooper II
In Cooper II, this Court considered the interpretation of a marital settlement agreement along with the contract for a life insurance policy. There, the husband designated his wife, Karin, as the primary beneficiary on two life insurance policies purchased during the marriage. Cooper II, 682 So.2d at 77-78. They divorced, and the separation agreement mutually released each party from any and all claims of the other, but did not mention the life insurance policies. Id. at 78. After the divorce, the husband changed the primary beneficiary on one of the policies to his stepdaughter. Id. However, he left the other policy with Academy Life Insurance Company unchanged, with Karin as the primary beneficiary and his wife, Sandra, as the secondary beneficiary. Id. Approximately a year after the divorce, the husband died and both Karin and Sandra claimed the proceeds of the policy. Id. Academy filed an interpleader to determine who was entitled to the proceeds. Id. The trial court ruled that Karin was entitled to the proceeds. Id.
On appeal, the Second District held that "without specific reference in a property settlement agreement to life insurance *1252 proceeds, the beneficiary of the proceeds is determined by looking only to the insurance contract." Id. (quoting Cooper v. Muccitelli (Cooper I), 661 So.2d 52, 54 (Fla. 2d DCA 1995)). The district court recognized conflict with Davis v. Davis, 301 So.2d 154 (Fla. 3d DCA 1974), Aetna Life Insurance Co. v. White, 242 So.2d 771 (Fla. 4th DCA 1970), and Raggio v. Richardson, 218 So.2d 501 (Fla. 3d DCA 1969), wherein the courts looked beyond the life insurance policies to the settlement agreements. Cooper II, 682 So.2d at 78.
This Court granted review, approved Cooper I, and disapproved Davis, Aetna, and Raggio. The Court reviewed the language of the settlement agreement, in particular the provisions entitled "Mutual Release and Discharge of Claims in Estates" and "Mutual Release of General Claims." Cooper II, 682 So.2d at 78. The Court also reviewed the language of the Academy policy designating the wife as the primary beneficiary. Id. at 79. Then, the Court stated:
We conclude that the plain language of the above documents controls. To the extent that Karin may have claimed a right to remain primary beneficiary under the Academy policy as a condition of the dissolution of marriage, she waived any such claim when she signed the above agreement. The agreement clearly states: "[E]ach party hereby waives . . . all claims . . . which he or she . . . might have . . . against the other." Thomas was free to designate whomever he wished as beneficiary. To determine whom Thomas intended as beneficiary, we need look no further than the plain language of the policy itself: The primary beneficiary is Karin Pasquino. After signing the separation agreement, Thomas did just what he needed to do to ensure that the proceeds would go to Karinhe did nothing.
The analysis urged by Sandra, i.e., that the general language in the separation agreement trumps the specific language in the policy, would place Academy in an impossible positionthe carrier could never be certain whom to pay in such a situation without going to court, in spite of what the policy said or how clearly it was worded.
Id. In a footnote, the Court noted: "Of course, a settlement agreement that specifically requires one of the parties to maintain a named individual as beneficiary will control the disposition of proceeds upon notice to the insurer." Id. at 79 n. 1.
In Cooper II, this Court looked to the language of the marital settlement agreement and the life insurance contract, stating that the plain language of the documents controls. We held that general language in a marital settlement agreement, which did not mention the disputed policy, could not trump the specific language in the policy, which clearly designated the ex-wife as the beneficiary. Further, we recognized that without a specific requirement in the settlement agreement that he maintain a named individual as the beneficiary, the ex-husband had full control over the policy and could designate whomever he wished as the beneficiary.

District Court of Appeal Cases and the Conflict Issue
The district courts of appeal have extended the reasoning of Cooper II to beneficiary-designated policies, plans, and accounts other than life insurance policies. See Smith v. Smith, 919 So.2d 525 (Fla. 5th DCA 2005) (individual retirement account (IRA) and annuity accounts); Luszcz v. Lavoie, 787 So.2d 245 (Fla. 2d DCA 2001) (IRA); In re Estate of Dellinger, 760 So.2d 1016 (Fla. 4th DCA 2000) (IRA); Waller v. Pope, 715 So.2d 958 (Fla. 2d DCA 1998) (employee pension plan and *1253 credit union account). This is a logical extension of the rule announced in Cooper II, because an IRA, an annuity account, and an employee pension plan are analogous to a life insurance policy in that the owner of the policy or plan has to take specific steps to designate a beneficiary and death benefits pass directly to a beneficiary rather than going through probate. As explained by the Second District, sitting en banc and receding from a previous case that held to the contrary:
An IRA is a contract with an institution that involves a third-party beneficiary designation. The rights of a spouse who has been named a beneficiary of an IRA arise from that contract, not from the marital relationship. Further, a beneficiary's rights to proceeds do not attach until the IRA owner's death. Until then, the beneficiary merely has an expectancy in the IRA because until the owner's death, the owner can do with the IRA as desired, including changing the beneficiary designation or cashing out the account altogether.
Luszcz, 787 So.2d at 248.[4] We conclude that this reasoning extends to the deferred compensation fund at issue in this case.
The application of Cooper II is straightforward when the settlement agreement makes no mention of the disputed plan or policy, but rather contains language such as a general release. This is directly analogous to this Court's decision in Cooper II, where the settlement agreement contained no mention of the life insurance policy, but rather only general releases. In such a situation, under Cooper II, the owner of the policy can designate whomever he or she wishes as the beneficiary, and the beneficiary designation controls. See, e.g., In re Estate of Dellinger, 760 So.2d at 1017; Waller, 715 So.2d at 960.
However, when the settlement agreement mentions the disputed policy or plan, the question then becomes whether the language in the settlement agreement is specific enough to override the predissolution beneficiary designation. We now turn to a discussion of two district court of appeal cases addressing such a situationthe Fifth District in Smith and the Second District in Luszcz. The Fifth and Second Districts came to a conclusion opposite to that of the Third District below.
In Smith, the Fifth District considered the effect of a settlement agreement that "identified the insurance policies in dispute, as well as various retirement plans." 919 So.2d at 527. With regard to these policies and plans, the agreement stated: "Husband shall receive as his own and Wife shall have no further rights or responsibilities regarding these assets." Id. At the time of the divorce, the wife was listed as the beneficiary of the policies and plans. Id. The settlement agreement also contained a general release of claims. Id.
About one and one-half years after the dissolution of marriage, the husband died without having changed the beneficiary on the policies and retirement plans. Id. The wife and the husband's estate both made claims to the funds generated by the policies and plans. Id. The trial court held that the settlement agreement acted as a waiver of any right the former wife had to the disputed funds. Id.
*1254 On appeal, the Fifth District referred to Cooper II, stating:
The Florida Supreme Court affirmed, saying that a contrary holding would put insurance companies in an "impossible position." Cooper v. Muccitelli, 682 So.2d 77, 79 (Fla.1996) ("Cooper II"). The high court pointed out that despite specific and clearly worded language in an insurance contract, a carrier could never be certain to whom to pay the proceeds. The lesson from Cooper I and Cooper II is that while it may be possible in a marital settlement agreement to waive one's right as a beneficiary of insurance policies, that waiver can only be accomplished if the waiving party specifically gives up his or her rights to the "proceeds" of these policies.[n.1] Otherwise, one must look only to the beneficiary designation made by the insured and filed with the insurer.
[n.1] Obviously, some other language such as "death benefits" would likely suffice.
Id. at 527-28. With respect to the life insurance proceeds, the Fifth District held that the settlement agreement failed to make specific reference to the proceeds of the insurance policies and, therefore, the wife, as the listed beneficiary, was entitled to the proceeds. Id. at 528.
As to the retirement plans, the Fifth District concluded that "[t]he same result obtains with respect to IRA and retirement plan proceeds, as well." Id. The Fifth District held:
Once again, the marital settlement agreement did not mention a disposition of the proceeds of the plans and accounts, and the decedent never changed the beneficiary designations. Under these circumstances, courts "need look no further than the plain language of the policy" to determine who the decedent intended as beneficiary of the proceeds.
Id.
The Second District has also addressed the situation where the settlement agreement specifically mentioned the disputed account; however, in that case the agreement divided the IRA between the husband and wife. Luszcz, 787 So.2d at 248. The marital settlement agreement in Luszcz provided that the ex-wife's IRA would be divided, with the ex-husband receiving $11,165 and the wife receiving $31,835 of the IRA. Id. at 246-47. The settlement agreement did not include releases of claims by either spouse against the other. Id. at 246.
Prior to the divorce, the husband had been designated as the beneficiary of the wife's account. Eight months after the final judgment of dissolution of marriage was entered, she died without changing the beneficiary on her portion of the IRA. Id. In holding that the ex-husband was entitled to the death benefits of the ex-wife's portion of the IRA as the listed beneficiary, the Second District examined Cooper II and determined that Cooper II should be applied to IRAs as well:
[A] beneficiary's rights to proceeds do not attach until the IRA owner's death. Until then, the beneficiary merely has an expectancy in the IRA because until the owner's death, the owner can do with the IRA as desired, including changing the beneficiary designation or cashing out the account altogether. See Waller v. Pope, 715 So.2d 958 (Fla. 2d DCA 1998); Cooper, 661 So.2d 52. Upon the IRA owner's death, however, the beneficiary's expectancy becomes an interest that attaches to the proceeds of the IRA, and those proceeds pass directly to the beneficiary; they do not pass through the estate. See Waller, 715 So.2d 958; Cooper, 661 So.2d 52. See *1255 also Graves v. Summit Bank, 541 N.E.2d 974 (Ind.Ct.App.1989).
Luszcz, 787 So.2d at 248. The Second District concluded that "[u]nless the dissolution judgment requires a spouse to name a particular beneficiary as a condition of a dissolution of marriage, the owner of the IRA is free to name whomever desired as the beneficiary." Id. Therefore, "[u]pon the IRA owner's death, the institution need look no further than the IRA contract to determine the beneficiary." Id. The Second District reasoned:
Otherwise, as pointed out by the supreme court in Cooper, the institution could never be certain whom to pay and would nearly always have to resort to going to court. In the end, it is the IRA owner's responsibility to change the beneficiary designation if a change is desired. Some marriages do end amicably and with a spouse desiring to maintain an ex-spouse as a beneficiary.
Id. (footnote omitted).
As discussed above, both the Fifth and Second Districts have held, albeit with differing reasoning, that when a marital settlement agreement mentions the disputed policy or plan, but does not specifically mention who should receive the death benefits (Smith) or does not require a spouse to name a particular beneficiary as a condition of dissolution of marriage (Luszcz), the reviewing court should look no further than the named beneficiary. These conclusions follow because, as explained in both opinions, the owner of the policy, plan, or account is free to designate whomever he or she chooses as the beneficiary. Smith, 919 So.2d at 529-30 ("[U]ntil the owner's death, the owner can do with the [account] as desired, including changing the beneficiary designation or cashing out the account all together." (quoting Luszcz, 787 So.2d at 248)); Luszcz, 787 So.2d at 248 ("Unless the dissolution judgment requires a spouse to name a particular beneficiary as a condition of a dissolution of marriage, the owner of the IRA is free to name whomever desired as the beneficiary."). Therefore, absent a change in the designation following the dissolution of marriage, the previous designation controls.
In contrast, the Third District would require that the owner reaffirm his or her designation of the spouse after the dissolution of marriage. The Third District held that language referring to Manuel Crawford "retain[ing] retirement money" with the deferred compensation fund was "sufficient to waive the former husband's pre-dissolution designation of the former wife as a beneficiary," Barker, 16 So.3d at 901, and that the fact that Manuel Crawford "did not reaffirm Linda Crawford as the beneficiary of this account confirms his intent that he was the beneficiary of this fund and that the money from the fund remained his at all times following the dissolution." Id. at 902 (quoting magistrate's report).

Resolving the Conflict
A marital settlement agreement and a deferred compensation fund are both contracts and subject to contract interpretation principles. Where the terms of a contract are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document. Levitt v. Levitt, 699 So.2d at 757; see also Sheen v. Lyon, 485 So.2d 422, 424 (Fla.1986) (stating that when the language of a contract "is clear and unambiguous[,] a court cannot entertain evidence contrary to its plain meaning"). In such a situation, "the language itself is the best evidence of the parties' intent, and its plain meaning controls." Richter v. Richter, 666 So.2d 559, 561 (Fla. 4th DCA 1995). This Court in Cooper II examined the language of the settlement agreement and the life insurance *1256 contract and concluded that "the plain language of the . . . documents controls." Cooper II, 682 So.2d at 79. Specifically, the Court held: "To the extent that Karin may have claimed a right to remain primary beneficiary under the Academy policy as a condition of the dissolution of marriage, she waived any such claim when she signed the above agreement. . . . Thomas was free to designate whomever he wished as beneficiary. To determine whom Thomas intended as beneficiary, we need look no further than the plain language of the policy itself. . . ." Id. (emphasis added).
The Fifth District in Smith held that without specific reference to who would receive the death benefits of the subject polices or plans, the settlement agreement was not sufficient to override the predissolution designation of beneficiary. Smith, 919 So.2d at 529-30. The Second District in Luszcz reasoned that without a requirement in the settlement agreement to maintain a particular named beneficiary, the owner of the policy, plan, or account can name anyone he or she chooses as the beneficiary and that designation should control. Luszcz, 787 So.2d at 248. Thus, both Smith and Luszcz hold that a reference to a beneficiary-designated policy, plan, or account in a settlement agreement, without clear reference to who should receive the death benefits upon the death of the owner, does not trump the specific and plain language of the beneficiary designation. The decisions of the Fifth District in Smith and the Second District in Luszcz are consistent with this Court's rationale in Cooper II to view settlement agreements as well as the terms of beneficiary-designated policies, plans, or accounts as contracts and to apply the plain language of those documents.
We conclude that the general magistrate's reasoning and the Third District's decision ignore the language of the settlement agreement (which states that Manuel Crawford is to retain the "retirement money" but does not refer to the death benefits or designate who should be the beneficiary) and the deferred compensation fund contract (which clearly lists Linda Crawford as the beneficiary). The practical effect of the Third District's decision is that a divorce would revoke an ex-spouse's status as the beneficiary if the settlement agreement identifies the policy, plan, or account unless the owner reaffirms the ex-spouse as the beneficiary. However, this view would accomplish an automatic revocation of a beneficiary designation, even when such a revocation was not contemplated by the parties and is not indicated by the plain language of the agreement.
Absent the marital settlement agreement providing who is or is not to receive the death benefits or specifying the beneficiary, courts should look no further than the named beneficiary on the policy, plan, or account. General language such as language stating who is to receive ownership is not specific enough to override the plain language of the beneficiary designation. Magic words are not required; however, if the parties wish to specify in a marital settlement agreement that a spouse will not receive the death benefits or wish to specify a particular beneficiary, this should be done clearly and unambiguously. Otherwise, the unifying principle of Cooper II, Smith, and Luszcz appliesthat the spouse who receives the policy, plan, or account as part of the marital settlement agreement is free to designate whomever he or she chooses as the beneficiary.

This Case
We now apply the rule of law to this case. Here, the settlement agreement provided: "Husband shall retain retirement *1257 money with" the deferred compensation fund. The agreement did not state who would receive the death benefits or who should be the beneficiary of the deferred compensation fund. However, the contract with Nationwide Retirement Solutions clearly designated Linda Crawford as the beneficiary. Accordingly, looking to the plain language of these documents, the beneficiary designation controls.
Barker contends that by implication, when one party agrees that the other party is to receive the proceeds of the deferred compensation fund, the first party by reason of the agreement waives his or her right to the proceeds. However, Barker's argument concerning implied waiver fails because the settlement agreement in this case did not specify that Manuel Crawford was to receive the proceeds, or death benefits, of the deferred compensation fund.
Barker further asserts that in light of the entire agreement in this case, the provision clearly meant the interpretation given to it by the general magistrate and Third District. However, nowhere in the settlement agreement is it mentioned who is or is not to receive the death benefits of the deferred compensation fund or who should be the beneficiary. Further, the agreement does not contain a general release clausethus, there is no additional language that the Court could potentially factor into its analysis. Rather, the agreement simply divides the marital property and decides the parties' rights with respect to alimony and attorneys' fees.[5]
In sum, we conclude, after reviewing the language of the marital settlement agreement, that the agreement gave Manuel Crawford ownership of the deferred compensation fund. As the owner, he had the right to designate the beneficiary of his choosing under the terms of the agreementhe was not obligated by the agreement to either maintain or change the beneficiary, and the agreement did not specify who was or was not to receive the death benefits. Thus, because the beneficiary designated on the deferred compensation fund is Linda Crawford, she is entitled to the death benefits.

CONCLUSION
For the foregoing reasons, we quash the Third District's decision in Barker v. Crawford, 16 So.3d 901 (Fla. 3d DCA 2009), and approve the decision of the Fifth District in Smith v. Smith, 919 So.2d 525 (Fla. 5th DCA 2005), to the extent that it is consistent with this opinion.
It is so ordered.
CANADY, C.J., and QUINCE, POLSTON, and LABARGA, JJ., concur.
LEWIS, J., dissents with an opinion, in which PERRY, J., concurs.
LEWIS, J., dissenting.
I dissent because I agree with the logical, sound recommendation articulated by the general magistrate and accepted by the Third District Court of Appeal below:

*1258 During the course of the marriage, "Linda Crawfordwife" was named as the designated beneficiary of the Deferred Compensation Fund. However, Linda Crawford and Manuel R. Crawford agreed at the time of the signing of the amended mediated settlement agreement that Manuel R. Crawford should get the money from this fund and that he should be the beneficiary. Manuel R. Crawford could have reaffirmed the designation of Linda Crawford had he chosen to do so following the dissolution of marriage. The fact that he did not reaffirm Linda Crawford as the beneficiary of this account confirms his intent that he was the beneficiary of this fund and that the money from the fund remained his at all times following the dissolution.
Barker v. Crawford, 16 So.3d 901, 901-02 (Fla. 3d DCA 2009).
I cannot join my colleagues in the majority because the decision today penalizes would-be litigants who turn to mediation as an alternative, cost-efficient form of dispute resolution in domestic matters. Mediation is designed and intended to be an informal mechanism that parties can utilize as an alternative to the formalistic rigors of litigation. See § 44.1011, Fla. Stat. (2010) (defining mediation as "an informal and nonadversarial process with the objective of helping the disputing parties reach a mutually acceptable and voluntary agreement." (emphasis supplied)). The majority decision now requires parties that participate in mediation to specify not only the allocation of specific assets, but also the allocation of those assets as they may exist in a future legal state. In essence, the majority opinion presumes that any asset mentioned in mediated settlement is presumed to be a life interest in that asset, as opposed to the more logical conveyance in fee simple absolute.
Mediation can only achieve the goal of "helping the disputing parties reach a mutually acceptable and voluntary agreement" if the intent of the parties is honored, as opposed to a court changing the effect of a mediated agreement. A plain reading of the mediated settlement agreement reached here indicates a clear intent to allocate the deferred compensation fund to the husband, for not only the duration of the husband's life but for all time and all purposes. The Family Mediation Unit Agreement provided that the wife received a car, four acres of undeveloped land, and all interests associated with a business, including property used for that business. The agreement provided that the husband received a car, residential property, a boat, an annuity, interests associated with his life insurance policy, and all "retirement money with the Town of Surfside and the Deferred Compensation Fund f/k/a Pepsco" without limitation. The parties, who did not have any minor children of the marriage, also waived any and all rights to alimony. A plain reading of the terms of this agreement yield one undeniable conclusion: the couple intended to split their assets absolutely and go their separate ways. To allow the wife to collect the posthumous benefits associated with the husband's deferred compensation funds is contrary to the intent of both the husband and the wife at the time the mediated settlement agreement was entered into.
An application of the majority decision yields an absurd result. If the husband here were to have suffered from an untimely demise immediately after he entered into the mediation agreement, but before it was physically possible for him to amend any pre-dissolution papers, the majority opinion would still require that pre-dissolution documents trump the mediation agreement. This flawed interpretation is contrary to the informal nature of mediation, which should be viewed through a *1259 different, less rigid prism than one used to scrutinize a lawyer-drafted and revised settlement agreement that is a product of traditional negotiations and formalized lawyer-drafted documents and litigation. The majority disregards the crystal clear intent of the parties in favor of a rigid application of pre-dissolution circumstances that were clearly intended to be superseded and overridden by the settlement agreement reached in mediation. This decision is inconsistent with the informal nature of mediation and will certainly discourage future divorcees from considering mediation and the short, less formal paperwork as an effective alternative to costly litigation. Accordingly, I dissent.
PERRY, J., concurs.
NOTES
[1] Jannie Barker was later substituted for Manuel Crawford for purposes of enforcing the final judgment.
[2] The magistrate stated that he was not taking this information as evidence.
[3] See Egelhoff v. Egelhoff, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (discussing when ERISA will preempt state law regarding the death benefits of an ERISA plan).
[4] In Luszcz, 787 So.2d at 248, the Second District receded from its previous decision in Vaughan v. Vaughan, 741 So.2d 1221, 1223 (Fla. 2d DCA 1999), in which it had distinguished and declined to apply Cooper II on two bases: (1) the insurance policy in Cooper was a term policy with no cash value and did not constitute a marital asset, unlike an IRA account; and (2) in Cooper II, there was no reference to the insurance policy in the settlement agreement, whereas in Vaughan, the settlement agreement divided the IRA as a marital asset.
[5] Specifically, the agreement stated the following: (a) there are no minor children of the marriage; (b) the husband shall receive the marital residence; (c) the parties waive rights to alimony; (d) the parties are responsible for paying their own costs and attorneys' fees; (e) the wife retains possession of the Ford van and the husband retains possession of the Chevy Suburban; (f) the husband will receive property in Tennessee; (g) the husband will receive the boat and trailer; (h) the wife will retain ownership interest in a business as well as the buildings used in the business; (i) the husband shall retain retirement money and an annuity; (j) the husband retains all interest in a life insurance policy and bank account; and (k) the parties will file a joint tax return for the previous year.