ON MOTION FOR CLARIFICATION

ROTHENBERG, J.
We grant the appellant’s motion for clarification, withdraw our opinion filed on March 26, 2014, and substitute the following opinion in its stead.
These consolidated appeals come to us upon the trial court’s partial final judgment in favor of appellee Biscayne Enterprises, Inc. (“Biscayne”) on its eviction action against Sunshine Gasoline Distributors, Inc. (“Sunshine”) and for rental payment disbursals related to that order. Sunshine argues that the language in the lease is ambiguous and that the trial *979 court erred in entering final summary judgment on that basis. We disagree, and therefore affirm.
Biscayne and BP Products of North America, Inc. (“BP”) entered into a lease, whereby Biscayne leased its real property to BP for the purpose of operating a gas station. In the lease, Biscayne and BP agreed to an initial five-year lease term with the option of seven additional five-year lease extensions as follows:
3. Extension Options, (a) Lessee shall have the option of extending this Lease for seven (7) additional successive periods of five (5) years each, subject to the written approval of Lessor, upon the same terms and conditions as set forth herein. The rental to be paid by Lessee during the extension period or periods shall be as set forth in the Rent Schedule annexed hereto and made a part hereof.
(b) At least ninety (90) days prior to the expiration of the then current period, Lessee shall provide Lessor written notice of Lessee’s election to exercise or not to exercise the extension option. If Lessee does not provide to Lessor such written notice, Lessor shall provide Lessee written notification advising Lessee that notice of Lessee’s election has not been received. Lessee’s option of extending this Lease shall remain in full force and effect for a period of thirty (30) days following receipt by Lessee of Lessor’s notification. It is the intention of Lessor and Lessee to avoid forfeiture of Lessee’s right to exercise its extension options by reason of any failure to provide timely notice to Lessor. The sending of notice exercising such extension option shall constitute the renewal and extension of this Lease in accordance with the terms of such renewal option so exercised, without the necessity of the execution of a separate renewal lease.
(emphasis added). Soon after the lease began, Biscayne and BP adopted a modification to the lease (“First Modification”), which altered the renewal requirements. The First Modification provided:
2. Paragraph 3. Extension Options., shall be modified to include subpara-graph (c), which shall read as follows:
(c) “The parties acknowledge and agree that any extension period as provided in paragraph 3., shall, in order to be binding upon the parties, require written approval of Lessor, which approval shall be within the sole discretion of Lessor. The parties further agree that the purpose of subparagraphs (a) and (b) hereof serve to provide the parties with an efficient mechanism for extension of the Lease if desired by both Lessor and Lessee.”
[[Image here]]
6. In the event of a conflict between the terms of the Lease and this First Modification, the terms of this First Modification shall prevail.
(emphasis added).
After seven years, BP assigned its full rights and interests in the leased property to Sunshine, and Sunshine took possession of the property subject to the terms of the lease and the First Modification. Near the expiration of the remaining term of its lease, Sunshine contacted Biscayne seeking an additional five-year extension, but Biscayne refused to renew the lease. Sunshine claimed it had an absolute right to renew based on the terms of the contract, and filed for declaratory relief adjudging its absolute right to remain on the property. Meanwhile, Biscayne filed an eviction action, claiming that the clear and unambiguous terms of the contract gave it full discretion to refuse the lease extension. The cases were consolidated, the trial court granted summary judgment in favor *980 of Biscayne regarding the eviction, and this appeal followed.
“The issue in this case ... concerns a matter of contract interpretation, which is a question of law subject to de novo review.” Jackson v. Shakespeare Found., Inc., 108 So.3d 587, 593 (Fla.2013). However, “[w]here the terms of a contract are clear and unambiguous, the parties’ intent must be gleaned from the four corners of the document.” Crawford v. Barker, 64 So.3d 1246, 1255 (Fla.2011).
We agree with the trial court that the terms of the lease and the First Modification are abundantly clear and unambiguous, and that Sunshine’s option to renew the lease is conditioned on Biscayne’s written approval, which can be withheld for any reason.[1] The renewal provisions in this lease could not be any clearer. However, if there was ever any doubt as to the meaning of the lease, the First Modification of the agreement resolved that doubt in Biscayne’s favor. The First Modification added subsection (c) to the lease renewal provisions, which states that a renewal “shall ... require written approval of Lessor, which approval shall be within the sole discretion of Lessor.” (emphasis added). And if that term was not clear enough, subsection (c) also specifically clarified the parties’ intentions in the original lease: “The parties further agree that the purpose of subparagraphs (a) and (b) hereof serve to provide the parties with an efficient mechanism for extension of the Lease if desired by both Lessor and Lessee.” (emphasis added).
Based on the clear language in the lease and the First Modification, we find that the trial court correctly entered judgment in favor of Biscayne on its eviction action, and therefore properly disbursed the rental payments to Biscayne. Sunshine did not have an absolute right to renew its lease; Sunshine’s lease was limited by Biscayne’s agreement to approve the renewal; and Biscayne’s approval of the lease renewal was within its sole discretion. Sunshine’s claimed right to renew the lease under the terms of the contract or under the duty of good faith and fair dealing is incorrect as a matter of law. This opinion shall have no effect on Sunshine’s ongoing claims regarding Biscayne’s alleged breach of the non-compete covenant elsewhere in the lease.
Affirmed.

. We recognize that the term "sole discretion” in some contracts can impose a duty of good faith and fair dealing despite the ostensibly absolute grant of authority in the contract language. E.g., Sepe v. City of Safety Harbor, 761 So.2d 1182, 1185 (Fla. 2d DCA 2000); Hyman v. Ocean Optique Distribs., Inc., 734 So.2d 546, 547-48 (Fla. 3d DCA 1999). The duty of good faith, however, is imposed in these instances only to protect the reasonable expectations of the parties to the contract when a broad range of authority is reposed in one of those parties. See Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1097-98 (Fla. 1st DCA 1999) (imposing a duty of good faith and fair dealing where the contract provided for an unspecified quantity of commodities to be shipped by one of the parties at the other party’s discretion). Where, as here, a contract simply provides a binary choice — to renew the lease or not — the duty of good faith and fair dealing is unnecessary to protect the parties’ interests, particularly when the lease terms make clear that the renewal provisions are simply to provide "an efficient mechanism for extension of the Lease if desired by both Lessor and Lessee.” (emphasis added). Contrary to Sunshine's assertion, imposing a duty of good faith and fair dealing in this instance would frustrate the parties’ expectations, not protect them. The term "sole discretion,” in this instance, simply means that both parties have the choice whether to renew the contract for any reason.