# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-2506
LT Case No. 2008-DR-2421

_____

RICHARD DAVIS,

    Appellant,

    v.

DAWN DAVIS,

    Appellee.

_____

On appeal from the Circuit Court for Hernando County.
Don Barbee, Jr., Judge.

Allison M. Perry, of Florida Appeals, P.A., Tampa, and John E. Napolitano, of Lucas, Macyszyn & Dyer, Spring Hill, for Appellant.

Kimberly A. Scarano, of Jeffery P. Cario, P.A., Brooksville, for Appellee.

July 12, 2024

BOATWRIGHT, J.

Appellant, Richard P. Davis ("Former Husband"), appeals the lower court's order finding him in contempt of a final judgment of dissolution of marriage which adopted the marital settlement agreement into which he and Appellee, Dawn M. Davis ("Former Wife"), had entered in 2008. The appeal centers on the lower

court's finding that Former Husband was obligated under the terms of the marital settlement agreement to pay half of the children's college tuition and expenses. Former Husband argues that the court erred when it: 1) interpreted the marital settlement agreement to provide that he had contractually agreed to pay half of his children's college tuition and expenses; 2) found him in contempt for failing to pay the college tuition and expenses, as a contractual obligation to pay college expenses for adult children cannot be enforced via contempt; and 3) determined there was no need to make a finding regarding Former Husband's ability to pay before it ruled him to be in contempt. We reverse on the basis that the court erred in construing the marital settlement agreement to require Former Husband to pay half of the children's college tuition and expenses; and because this issue is dispositive, we do not reach the remaining two issues on appeal.[1]

I.

Former Husband and Former Wife got divorced in December of 2008. They both represented themselves throughout the entirety of the divorce proceedings. At the time of the divorce, they had two minor children, "A.P.D." and "I.Z.D.," who were born in 2002 and 2003, respectively. The final judgment of dissolution of marriage incorporated a marital settlement agreement that the parties had jointly drafted. Particular to this appeal, section 10 of the marital settlement agreement is entitled "Secondary School Expenses." The provision reads as follows:

> The parties agree that the Husband will be responsible, above and beyond the standard monthly child support, for 50% of any secondary educational tuition and/or related expenses for all of the children.

---

[1] Although we do not reach the contempt issue on appeal, we note that a contractual duty to pay a child's college tuition and expenses cannot be enforced by contempt. *See Southard v. Southard*, 756 So. 2d 251, 253 (Fla. 5th DCA 2000).

Should one of the children not attend a secondary educational institution prior to the age of twenty-one (21), the Husband is relieved of this financial responsibility for that child.

The case was dormant until March of 2023, when Former Wife filed a "Verified Motion for Contempt and Enforcement of Final Judgment" (the "contempt motion") against Former Husband, alleging that he had failed to comply with section 10 of the marital settlement agreement by refusing to provide any reimbursement for the eldest child's (A.P.D.) college tuition and expenses.

In the contempt motion, Former Wife alleged that A.P.D. had graduated from high school in 2020 at the age of 18 and had since been continuously enrolled in college full-time. As of the date the motion for contempt was filed, A.P.D. had incurred tuition costs and related expenses cumulatively totaling $21,212.77. Former Wife alleged that she had notified Former Husband of his obligation to provide reimbursement for half of A.P.D.'s college expenses under section 10 of the marital settlement agreement and that he had refused to provide her with any reimbursement. Former Husband responded with an answer, a motion for summary judgment, and a motion to dismiss the contempt motion. Former Husband's primary argument in said motions was that section 10 of the marital settlement agreement did not require him to pay half of A.P.D.'s college expenses because college is "postsecondary education," as opposed to "secondary education," which is the term used in the provision. He asserted that he was thus only responsible for half of any tuition and associated costs for "secondary education," which under its ordinary meaning constituted "a school intermediate between elementary school and college and usually offering general, technical, vocational, or college-preparatory courses."

A hearing was held on the contempt motion. Both parties were represented by counsel as they now are on appeal. The court agreed that the term "secondary education" did not mean college. The court referenced that the term meant high school. However, the court stated that when taken together with the second part of the provision at issue, the term "secondary education" did not

3

make any sense. In this regard, the court stated: "[T]he second paragraph . . . makes the first paragraph not make any sense if we're talking about high school. Because people don't elect to go to high school between the ages of 18 and 21 and incur tuition and fees." As such, the court found that the provision was ambiguous and decided to allow the submission of parol evidence, over Former Husband's objection, to ascertain the intent of the parties.

Former Wife then testified that both she and Former Husband had been unrepresented during the course of the initial dissolution proceedings, and that they ultimately drafted the marital settlement agreement by mutual agreement via an online document assistant service called "3StepDivorce.com." Her account of section 10 of the marital settlement agreement was that the provision was added because Former Husband was not able to pay his full child support obligation. She testified she agreed to a reduced child support amount in exchange for his agreement to pay for "half of college for each of the children," and section 10 of the marital settlement agreement was drafted to embody this agreement. Former Husband, however, testified that he and Former Wife never discussed college expenses when they were drafting the marital settlement agreement.

The court issued a written order finding that the disputed provision applied to college and not secondary school. The court found that the language of the provision at issue was ambiguous. In so ruling, the court relied on Former Wife's testimony, as the court found her to be more credible than Former Husband, to find that the parties had intended the provision to apply to college tuition and expenses. The court stated: "It would be an illogical reading of the entirety of paragraph 10 for the parties to have intended the [Former Husband] to pay 50% of high school costs unless one of the children decided not to attend prior to the age of 21." The court further explained: "That essentially means that the child could decide at 13 or 14 years old to quit high school and go another direction in life. Courts may not interpret contracts to reach absurd results."

As a result of the court's interpretation of the provision, the court denied Former Husband's motion to dismiss and motion for summary judgment. The court held Former Husband in contempt

for violating the parties' final judgment of dissolution of marriage because of his failure to reimburse his portion of A.P.D.'s college expenses under section 10 of the marital settlement agreement and ordered him to pay his half of the college tuition and expenses and attorney's fees to Former Wife.

## II.

We review the lower court's interpretation of the marital settlement agreement de novo. *Muir v. Muir*, 925 So. 2d 356, 358 (Fla. 5th DCA 2006) ("Interpretation of a marital settlement agreement is a matter of law and places the appellate court on an equal footing with the trial court as interpreter of the written document. Thus, the standard of review is de novo." (citations omitted)).

"[A] marital agreement entered into by the parties and ratified by the court is a contract which is subject to interpretation, just like any other contract." *Id.* at 358. "It is well settled that where a contract is clear and unambiguous, the parties are bound by the plain terms of their agreement." *Pack v. Wiechert*, 285 So. 3d 1031, 1033 (Fla. 1st DCA 2019). "When interpreting a marital settlement agreement, 'the language itself is the best evidence of the parties' intent, and its plain meaning controls.'" *Walsh v. Walsh*, 262 So. 3d 212, 215 (Fla. 5th DCA 2018) (quoting *Crawford v. Baker*, 64 So. 3d 1246, 1255 (Fla. 2011)). Additionally, "the entire contract should be considered and provisions should not be considered in isolation to other provisions in the contract." *Id.* "The goal of contract interpretation is to arrive at a reasonable interpretation of the text in order to accomplish its stated meaning and purpose." *Id.* (citing *Am. K-9 Detection Servs., Inc. v. Cicero*, 100 So. 3d 236, 238–39 (Fla. 5th DCA 2012)).

Further, where the terms of a marital settlement agreement are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document. *Levitt v. Levitt*, 699 So. 2d at 756, 757 (Fla. 4th DCA 1997). "Florida courts will not rewrite the terms of a marital settlement agreement or any other contract in which the terms are clear and unambiguous." *Pack*, 285 So. 3d at 1033; *see also Cole v. Cole*, 95 So. 3d 369, 371 (Fla. 3d DCA 2012) ("We have repeatedly held that a court-approved marital

settlement agreement is nothing more or less than a contract, and we will not rewrite terms that are clear and unambiguous."). As such, in contract interpretation, "extrinsic evidence . . . should not be used to introduce [a contractual] ambiguity where none exists." *EcoVirux, LLC v. BioPledge, LLC*, 357 So. 3d 182, 187 (Fla. 3rd DCA 2022) (internal citation omitted).

"When interpreting contracts, we may consult references commonly relied upon to supply the accepted meaning of words." *Grove at Harbor Hills Homeowners v. Harbor Hills Dev., L.P.*, 158 So. 3d 611, 612 (Fla. 5th DCA 2013) (internal citations omitted). As a result, when a contractual term is not defined in a contract, "[d]ictionaries aid us in establishing the publicly understood plain meaning of a word whose relevant definition is contested." *Parrish v. State Farm Fla. Ins. Co.*, 356 So. 3d 771, 776 (Fla. 2023). Thus, "[d]ictionaries are commonly consulted to ascertain the plain meaning of words used in a contract." *Burlington & Rockenbach, P.A. v. Law Offs. of E. Clay Parker,* 160 So. 3d 955, 958 (Fla. 5th DCA 2015) (citing *Beans v. Chohonis*, 740 So. 2d 65, 67 (Fla. 3d DCA 1999) ("One looks to the dictionary for the plain and ordinary meaning of words.")).

In determining the meaning of secondary school, the *Merriam-Webster Online Dictionary* defines secondary school as a school "intermediate between elementary school and college and usually offering general, technical, vocational, or college-preparatory courses." Secondary school, *Merriam-Webster Online Dictionary*, https://www.merriamwebster.com/dictionary/secondary%20school (last visited June 20, 2024). Similarly, the online *American Heritage Dictionary of the English Language* defines a secondary school as "a school that is intermediate in level between elementary school and college and that usually offers general, technical, vocational, or college-preparatory curricula." Secondary school, *Am. Heritage Dictionary of the English Language Online*, https://ahdictionary.com/word/search.html?q=secondaryschool) (last visited June 20, 2024).

On appeal, the Former Husband argues that the trial court erred in interpreting the provision at issue to apply to college

6

tuition and expenses. We agree. First, the provision at issue is entitled "Secondary School Expenses," and the provision contains only language referencing secondary education tuition and expenses. *See Prop. Registration Champions, LLC v. Mulberry*, 373 So. 3d 675, 680 (Fla. 5th DCA 2023) (in interpreting a contractual provision, the language of a title or heading can be extremely valuable where it reinforces what the text independently suggests). The subject provision contains no reference to college or college related expenses. The terms "secondary education" and "secondary school" are clear and unambiguous. As stated previously, the term plainly means "a school intermediate between elementary school and college and usually offering general, technical, vocational, or college-preparatory courses." A reasonable interpretation of the provision at issue is that it requires Former Husband to pay 50% of any secondary educational tuition and/or related expenses which could apply to middle, high school, or vocational school. Under the clear terms of the provision, Former Wife could have sought enforcement of the final judgment had Former Husband refused to pay for tuition or expenses related to any of this type of schooling. However, the plain language of section 10 does not in any way require Former Husband to pay college tuition or related expenses as written.

The court agreed that under its plain meaning, the term "secondary school" or "secondary education" would encompass, for example, high school but not college. However, the court found that the second part of the provision did not make sense in reference to secondary education and produced an absurd result. The second part of the provision read, "[s]hould one of the children not attend a secondary educational institution prior to the age of twenty-one (21), the Husband is relieved of this financial responsibility for that child." We do not find this provision produces an absurd result, but rather a reasonable interpretation is that the parties chose a limit as to the age of the children for which Former Husband would be responsible for the children's educational tuition and expenses. It would be perfectly reasonable for a child to attend a private high school or vocational school and incur tuition costs. A child could also attend a public high school but incur expenses in relation to that schooling. Contrary to the trial court's assertion that individuals do not attend a secondary school past 18 years of age, we find that it is not an unreasonable reading

7

to conclude that children could attend a private high school past the age of 18 or attend a vocational school up to the age of 21.

Indeed, both parties on appeal argue that language of the provision is unambiguous. Specifically, Former Wife argues that the language in the provision is unambiguous when reading the provision as a whole and that the court was correct in its interpretation that the provision applied to college tuition and expenses. However, the provision cannot reasonably be interpreted to apply to college education as written. The only way to read the provision as such would be to re-write the terms of the provision to change secondary education to post-secondary education or college education.

Contrary to Former Wife's assertion, the court, rather than finding that the plain language of the provision was clear and unambiguous, found that the provision at issue when read as a whole was ambiguous. The court acknowledged this when it found that the provision was illogical, absurd, and did not make sense. In essence, the trial court found that the provision contained a patent ambiguity. As such, the court relied on parol evidence to resolve the perceived ambiguity and effectively had to re-write the terms of the provision.

"A patent ambiguity is one which appears on the face of a contract and arises from the use of defective, obscure, or insensible language." *Bike Street Bikes, Inc. v. Bourgett's Bike Works, Inc.,* 900 So. 2d 697, 700–01 (Fla. 5th DCA 2005) (quoting *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1002 (Fla. 2d DCA 1995)). Normally, a court may not resolve a patent ambiguity by consideration of extrinsic evidence. *Id.* Considering the court's reasoning, it should not have attempted to resolve the purported patent ambiguity by considering parol evidence and re-write the terms of the provision, but rather should have found the provision unenforceable. *See Bowein v. Sherman*, 374 So. 3d 895, 897 (Fla. 6th DCA 2023) (holding that parol evidence cannot be used to resolve a patent ambiguity where a material term is in conflict, but rather the provision is unenforceable; and a court errs when it chooses one contradictory provision of contract over another because it is "impermissibly rewriting the contract"). More importantly, neither party in this case claims that paragraph 10 is

ambiguous; thus, the court should have never relied on parol evidence in the first place as the language was unambiguous. *See EcoVirux,* 357 So. 3d at 187 ("It is axiomatic that 'extrinsic evidence . . . should not be used to introduce [a contractual] ambiguity where none exists.'" (quoting *Interwest Constr. v. Brown,* 29 F.3d 611, 615 (Fed. Cir. 1994)).

## III.

We hold the marital settlement provision at issue is clear and unambiguous and applies to secondary education tuition and expenses and not college tuition or expenses. As such, it was error for the court to resort to parol evidence and re-write the terms of the marital settlement agreement to find that the parties contemplated college tuition and expenses, rather than secondary school tuition and expenses as expressed by the provision. We therefore reverse the trial court's order.

We understand the court's concern that Former Husband pay for one-half of his child's college tuition and expenses. However, absent a valid contractual agreement where the parties agree to educate their child after the child reaches the age of majority, any duty a parent has to pay an adult child's college expenses is moral, rather than legal. *Grapin v. Grapin,* 450 So. 2d 853, 854 (Fla. 1984); *see also Madson v. Madson,* 636 So. 2d 759, 761 (Fla. 2d DCA 1994) ("Even though most financially able parents willingly assist their adult children in obtaining a higher education, any duty to do so is a moral rather than a legal one, absent either a finding of legal dependence or a binding contractual agreement by the parent to pay such support.").

REVERSED and REMANDED.

EDWARDS, C.J., and MACIVER, JJ., concur.

9

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____