# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 6D2024-1357
Lower Tribunal No. 2021-DR-005662-O

———————————————

JIMMIE RUSHING, JR.,

Appellant,

v.

SYLVIA RUSHING,

Appellee.

———————————————

Appeal from the Circuit Court for Orange County.
Mikaela Nix-Walker, Judge.

September 19, 2025

TRAVER, C.J.

Jimmie Rushing, Jr. ("Former Husband") appeals a supplemental final judgment awarding Sylvia Rushing ("Former Wife") nearly twenty-five percent of his military pension, which he accrued over twenty-four years of service in the United States Air Force. We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A). The trial court misconstrued an unambiguous marital settlement agreement that limited Former Wife's pension entitlement to a percentage based on Former Husband's "hypothetical" military retirement when they divorced after a twelve-year marriage. This error awarded Former Wife a higher monthly pension payment

because it was based on Former Husband's most lucrative three years of service that occurred after the parties' divorce. We remand for its correction.

Former Husband joined the Air Force in 1994, and the parties married in 2001. When Former Husband filed for divorce in 2013, he had attained the rank of Master Sergeant (E-7). The parties reached a marital settlement agreement, which the trial court adopted and incorporated into a final judgment. Former Husband had no intention of retiring from the Air Force in 2013, so neither he nor Former Wife could yet reap the benefits of his military pension. They agreed, though, that Former Wife would take "an amount" of Former Husband's pension whenever he did retire:

> Effective on the first day of the first month following his retirement from active duty with the United States Air Force and on the first day of each month thereafter, the Husband shall pay, or cause to be paid, to the Wife, as a property right, from the Husband's United States Air Force retirement pay, an amount of his disposable retirement pay as defined in the Uniform Services Former Spouses Protection Act.

The agreement began calculating this "amount" through a simple formula designed to determine half the time the parties had been married while Former Husband served on active duty in the military ("the Formula"):

> The amount shall be calculated pursuant to the parties having been married and living together as Husband and Wife for **143** months while the Husband was on active duty. Thus DFAS[1] shall calculate the percentage using

---

[1] DFAS is the Defense Finance Accounting Service, which provides payment services to the United States Department of Defense.

2

the following formula: (143/AD) x 0.5 where 'AD' is defined as the actual number of months of creditable active duty time accrued by the Husband as of the date of his retirement.

Because Former Husband served in the Air Force for several years before the parties' marriage and six years after their divorce, the "AD" is 288, and the calculated percentage is 24.83%. The parties do not dispute this.

But the agreement does not stop there. It dictates that Former Wife's "percentage share" of Former Husband's pension "shall be calculated" at his salary and rank at the time he filed for divorce:

> The Wife's percentage share of the Husband's disposable retirement pay shall be calculated at the salary and rank attributable to the Husband's rank of **E-7** at **18** years, which is the rank and years that the Husband had attained at the time of the filing of the petition for dissolution.

Lastly, the agreement contained an express reservation of jurisdiction for a future trial court to calculate "the correct percentage of military retired pay to be paid to the [Former] Wife." This calculation required the trial court to use the Formula "set forth above." It was also "**based upon** the [Former] Husband's **rank, years of service**, and **retired pay base** set forth above" if the parties did not stipulate to "such percentage" or if DFAS did not automatically calculate it. (emphasis added).

Former Husband retired from the Air Force in 2018 after twenty-four years (288 months) of service. Former Husband's additional years of service after the

3

parties' divorce meant that his monthly pension payment was 60% of the average of his monthly pay for his most lucrative three years of service, instead of the 45% he would have received had he retired the day the parties divorced. Former Wife submitted a copy of the agreement to DFAS on three occasions, but each time, it rejected her submissions because it was missing critical information needed to calculate Former Wife's share.

Former Wife then sought modification of the parties' divorce judgment to address this issue. In her first effort, Former Wife only challenged the Formula's numerator. She insisted they had been married 146 months, and the 143-month figure was thus incorrect. Former Husband claimed, via verified affirmative defense, that res judicata barred this challenge. He argued that the trial court lacked authority to recalculate the length of the parties' marriage.[2] He also said, though, that the Formula contained the only missing information needed to obtain a trial court order to present to DFAS. Former Wife would later argue this was a statement against interest, and that it controlled how the trial court should read the agreement.

Former Wife then amended her supplemental petition, asking the trial court to equitably distribute Former Husband's pension. She adopted a second theory about the agreement's pension provision that she pursued through trial. She now claimed

---

[2] He could have also mentioned that the agreement calculated the Formula's numerator "pursuant to the parties having been married **and** living together." (emphasis added).

the final judgment only allowed the trial court to apply the Formula and nothing else. If the trial court accepted this argument, it would allow Former Wife to take 24.83% of Former Husband's pension without regard to his rank or salary when the parties divorced. Instead, she would receive that percentage over his entire military career.

The matter proceeded to trial, where the parties agreed the agreement was unambiguous. Through an expert Air Force veteran and lawyer who had handled over 100 military retirement cases, Former Husband offered testimony that the Department of Defense had promulgated a regulation that instructed how to divide and distribute military pensions. The regulation defined "retired pay base," a term contemplated in the agreement's reservation of jurisdiction provision, as "the average of the member's highest 36 months of basic pay at retirement (high-3 amount)" for members who entered military service after 1980. This was meant to disincentivize immediate retirement when a service member achieved a final promotion. Before 1980, the military employed a "High-1" formula.

Former Husband argued that the agreement's references to "rank, years of service and retired pay base set forth above" meant that the trial court had to assume he had retired after eighteen years as a Master Sergeant (E-7). The military retirement expert explained that because Former Husband did not, in fact, retire at that time, an accurate calculation of Former Wife's entitlement to his pension required a "hypothetical" retirement date corresponding to Former Husband's

5

divorce petition. And because Former Husband had only eighteen years of military service then, it also required—under Department of Defense regulations—a calculation what his High-3 amount would have been. He explained that DFAS had thrice rejected Former Wife's applications because they only included the final judgment and did not state her calculated percentage share or Former Husband's hypothetical retirement date, High-3 amount, years of service, and rank when he filed for divorce. Using Former Husband's military pay records, the expert calculated Former Husband's High-3 pay base amount when the parties divorced as $3,822.51. Former Husband thus contended the agreement unambiguously required the trial court to provide this additional information to DFAS.

Former Wife did not challenge this testimony. Rather, she questioned its applicability to the parties' agreement, even unsuccessfully moving in limine to exclude it as irrelevant. Insisting the agreement was unambiguous, she claimed its plain language required only application of the Formula to Former Husband's entire retirement pay. In support, she argued that the agreement does not contain the words "hypothetical" or "High-3."

The trial court agreed with Former Wife's interpretation. But it determined the agreement was ambiguous and subject to differing interpretations. To this end, it found that Former Husband's verified affirmative defense about how the trial court should interpret the agreement mattered. It also noted "inconsistencies" in the

6

expert's testimony because he said that DFAS would not accept any order that did not contain "High-3" information but that it would also accept an order that allowed Former Wife to take a percentage of Former Husband's entire pension.[3]  The trial court credited Former Wife's testimony that all the trial court needed to do to calculate her percentage of Former Husband's pension was the Formula.  Lastly, it considered Former Husband's failure to pay Former Wife any portion of his pension as evidence supporting Former Wife's interpretation of the agreement.

The parties' marital settlement agreement is a contract, and like all contracts, we review it de novo.  *See Davis v. Davis*, 390 So. 3d 1251, 1255 (Fla. 5th DCA 2024) (citing *Muir v. Muir*, 925 So. 2d 356, 358 (Fla. 5th DCA 2006)).  Where a contract is clear and unambiguous, parties are bound by its terms, and we glean their intent from the document's four corners.  *See Pial Holdings, LTD v. Riverfront Plaza, LLC*, 379 So. 3d 547, 551 (Fla. 6th DCA 2024) (citing *Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011)).  A contract is ambiguous only when its language "is susceptible to more than one reasonable interpretation."  *See id.* (quoting *Penzer v. Transp. Ins.*, 29 So. 3d 1000, 1005 (Fla. 2010)).  This does not mean, though, that a contract is ambiguous because we could possibly interpret it in more than one manner.  *See id.* (citing *Am. Med. Int'l, Inc. v. Scheller*, 462 So. 2d 1, 7 (Fla. 4th

---

[3] The trial court noted another "inconsistency" that the record does not support.  The expert never said that DFAS would accept a "High-1" calculation except for retirements that occurred before 1980.

7

DCA 1984)). "Therefore, where one interpretation of a contract would be absurd and another would be consistent with reason and probability, we will interpret the contract in the rational manner." *See id*. (citing *Vyfvinkel v. Vyfvinkel*, 135 So. 3d 384, 386 (Fla. 5th DCA 2014)).

The agreement is unambiguous. It does not just compel the Formula's application. It also requires the trial court to calculate Former Wife's share of Former Husband's pension "based upon" his rank, years of service, and retired pay base as if he had retired when the parties divorced. Former Wife's interpretation of the agreement erases this critical language. But we must review the agreement as a whole and according to its plain language. *See id*.; *see also Hull v. Burr*, 50 So. 754, 765 (Fla. 1909) ("In construing any written instrument . . . the entire instrument must be considered in order to gather the real intent and true design of the makers thereof. To that end all the different provisions of such instrument must be looked to and all construed so as to give effect to each and every one of them, if that can reasonably be done."). The agreement's failure to include the term "High-3" does not doom its only reasonable interpretation because the trial court needed this information to calculate Former Husband's "retired pay base." This term has a definite legal meaning, which we presume the parties intended in the absence of any contrary intention in their agreement. *See Langley v. Owens*, 42 So. 457, 460 (Fla. 1906). Nor did the agreement need to use the term "hypothetical" expressly when its plain

8

language contemplated an imaginary retirement. Finally, the expert's undisputed testimony did not make an agreement containing terms related to military retirement ambiguous, and thus dependent on parol evidence; a trial court can receive extrinsic evidence to explain technical terminology in an unambiguous contract. *See NCP Lake Power, Inc. v. Fla. Power Corp.*, 781 So. 2d 531, 536–37 (Fla. 5th DCA 2001) (citing *Se. Banks Tr. Co., N.A. v. Higginbotham Chevrolet-Oldsmobile, Inc.*, 445 So. 2d 347, 348 (Fla. 5th DCA 1984)).

The trial court erred by relying on parol evidence to explain an unambiguous agreement in several ways having nothing to do with its technical terminology. *See Bond v. Hewitt*, 149 So. 606, 607–08 (Fla. 1933) ("The general rule is that parol evidence is not admissible to vary, contradict, or defeat the terms of a complete and unambiguous written document"). It credited Former Wife's interpretation of what the agreement meant, and it discredited Former Husband for making a "statement against interest" in an abandoned and irrelevant affirmative defense that did not even relate to Former Wife's interpretative position at trial. Neither were relevant in construing an unambiguous contract, which is cabined by its four corners. Finally, the trial court misapprehended the expert's testimony about what DFAS would accept. The expert indeed said DFAS would honor an order directing it to give Former Wife 24.83% of Former Husband's entire pension, but he also said the

9

agreement did not support this action. The trial court's contrary interpretation misapplied the plain language of an unambiguous agreement.

For these reasons, we reverse the trial court's determination that Former Wife is entitled to 24.83% of Former Husband's entire pension. On remand, the trial court shall vacate that portion of the supplemental final judgment, including its improper military retired pay division order. Its amended supplemental final judgment shall include a military retired pay division order containing: 1) the 24.83% contemplated by the Formula; 2) the hypothetical retirement date (April 11, 2013); 3) Former Husband's rank when the parties divorced (E-7); 4) Former Husband's years of service when the parties divorced (eighteen); and 5) Former Husband's retired pay base ($3,822.51) when the parties divorced.

REVERSED and REMANDED with instructions.

WOZNIAK and MIZE, JJ., concur.

Richard J. Mockler, of Mockler Leiner Law, P.A., Tampa, for Appellant.

Carlton Pierce, of Carlton Pierce, P.A., Boynton Beach, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED