PER CURIAM.
After nineteen years of marriage and four children, the appellant-wife obtained a Mexican divorce in 1967, which incorporated a comprehensive separation agreement previously entered into by the parties. Thereafter, for a number of years appellee made substantial alimony payments to the appellant. However, prior to filing her suit in 1975, appellee’s financial situation changed dramatically, his alimony payments became erratic, and this litigation ensued.
Appellant filed a multi-count complaint in the Circuit Court of Broward County, which, in pertinent part, prayed that the Mexican decree be enrolled as a judgment of the Circuit Court and that the alimony arrearages be determined and appellant’s rights enforced. The trial court entered a judgment favorable to the appellant, but on petition for rehearing that judgment was vacated and a new judgment entered which is the subject of this appeal.
Appellant poses five points in her brief for our consideration, all of which we have fully treated. However, in our judgment only one of those points requires any extended discussion. In that point appellant contends the trial court erred in giving the appellee a credit of $56,305 toward future alimony for overpayments which the husband made prior to the institution of this suit.
In the judgment under review the trial court, among other things, directed the ap-pellee to pay to the appellant a maximum annual alimony payment of $24,000 for any year in which his adjusted gross income is $100,000 or more. Should his adjusted gross income fall below $100,000, appellee is directed to pay 40% thereof to appellant. The judgment, however, further provided that appellee should first apply toward his alimony obligation a credit of $56,305. The credit arose as a result of the court’s determination that during the years since the Mexican divorce appellee had paid appellant more alimony than was due under their separation agreement.
*671 The evidence reflected that during the marriage and the early post marriage years appellee had been a very successful investment broker. Between 1967 and 1974 the court found appellee had paid $167,000 in alimony, when only $110,695 was due; thus the $56,305 credit. With regard to the overpayments, the husband testified that he often did not compute the exact amount due, but rather simply sent a check for the maximum amount which could be owed, i. e. $2,000 per month. When things got tight he began to compute the amount due. Referring to the more prosperous days when he was making overpayments, the appellee stated:
“My purpose was to give her the money. The money was that which she said she needed. In those days, I had a lot of money, Bob, and I didn’t care. I wanted the deduction but I didn’t care so much about money in those days.”
It is quite obvious from the testimony that neither of' the parties considered the over-payments as advances on future alimony payments. They were more in the nature of gifts. As appellee said, in those days he had plenty of money and he wanted the deduction. To allow a husband to offset-monthly alimony payments due in 1979 by overpayments generously made in 1970 without any agreement to that effect could leave an erstwhile wife destitute. That is no doubt why the general rule seems to be that “it is the obligation of a divorced husband to pay the ■ specified amounts according to the terms of the decree and he should not be permitted to vary these terms to suit his own convenience.” [1]
Most of the cases which have considered a claimed set off against delinquent alimony or other support payments have to do with the husband’s advancing money for the wife’s debts or furnishing her with other goods or services.[2] However, in Corbett v. Corbett, 116 Ariz. 350, 569 P.2d 292 (Ct.App.1977), the husband sought to set off against his indebtedness to his wife for past due alimony sums which he had previously overpaid in prior years. In rejecting such a set off the court said:
The trial court also found, however, that during that period respondent paid petitioner twice the amount he was obligated to pay for child support and alimony. But, since there had been no agreement between the parties that the excess payments were advanced as future alimony or child support, the court refused to permit respondent to set these payments off against arrearages accruing between 1970 and 1975. The evidence supports this decision.
Where one purports to pay an obligation prior to the time he is obligated to pay it, and the obligee receives his tender for the purpose of extinguishing all or part of the debt, then there is “payment.” Oklahoma Tax Commission v. Oven, 338 P.2d 1095 (Okl.1959). In the present case there was no agreement that the excess payments made by respondent between 1967 and 1970 were to satisfy or to constitute “payment” of his future support obligations. Absent such an agreement or acknowledgment this excess cannot be considered payment of respondent’s support obligations and may not be used to offset his support arrearages between 1970 and 1975. 569 P.2d at 294.
In the situation presented by this record we find no equities which would justify allowing appellee the credit in question. Accordingly, the judgment appealed from is affirmed in all respects except that portion thereof which allows appellee a credit of $56,305 for overpayments of alimony. As to the provision allowing the credit, the judgment is reversed and the cause is remanded with directions to delete that provision from the judgment.
AFFIRMED IN PART; REVERSED IN PART, with directions.
DOWNEY, C. J., and ANSTEAD, J., concur.

. Mixson v. Mixson, 253 S.C. 436, 171 S.E.2d 581 (1969).

. Chappell v. Chappell, 253 So.2d 281 (Fla. 4th DCA 1971).