SAWAYA, J.
A disagreement between attorneys regarding fees has led to the filing of this appeal by the attorneys dissatisfied with the decision rendered in the underlying declaratory judgment and breach of contract action. The dissatisfied attorneys are Burlington & Rockenbach, P.A. (Burlington), which is a professional association of attorneys specializing in appellate practice. Burlington seeks reversal of the judgment under review that awards the attorneys’ fees to three separate professional associations (they will be formally introduced shortly) that we will refer to as Trial Attorneys. As the moniker implies, they provide legal services in the realm of trial practice, and they formed an alliance to try the tort litigation instituted on behalf of their mutual client. The dispute centers on certain provisions of a fee contract between Burlington and Trial Attorneys, so rules of contract interpretation will direct our review.[1]
*957 The genesis of the contract is a wrongful death action filed by Trial Attorneys on behalf of the estate of the decedent, who allegedly died as a result of medical malpractice and a defectively designed and manufactured transdermal patch. The underlying facts of that cause of action are not important to the resolution of the issue before us, so we will not discuss them. It is enough to say that because wrongful death actions based on medical malpractice and defective medical products portend complicated trials and potentially large verdicts, Trial Attorneys concluded that the services of an appellate practitioner would be necessary to help steer them clear of reversible error during the course of the trial. They selected Burlington to be their navigator.
The contract is titled “Trial Support Agreement” and contains the following pertinent provisions that formed the basis of the disagreement:
3. In addition to the aforestated hourly fee, Jacobs & Goodman, P.A. shall pay Burlington & Rockenbach, P.A. one and one-half (1 1/2%) percent of the gross recovery obtained if the case, or any portion of it, is settled prior to the filing of a Motion for New Trial or other post trial motion by any defendant or preparation of a Motion for New Trial or other post trial motion for Plaintiff or two and one-half percent (2 1/2%) of the gross recovery if the case is settled after Burlington & Rockenbach, P.A. is requested to take any action in preparation of a response to or drafting a motion for New Trial by Joe Taraska. Joe Taraska’s request to Burlington & Rock-enbach, P.A. or any of its attorneys to take the aforesaid action shall be by email or other written [communication].
4. The services encompassed by this agreement shall not include any services in any appellate court. Any appellate services will be the subject of a separate agreement.
Jacobs & Goodman, P.A., is one of the professional associations that make up Trial Attorneys, ahd Joe Taraska is an attorney associated with Jacobs & Goodman. The other two members of this alliance are Law Offices of E. Clay Parker, P.A., and Richard B. Troutman, P.A.
The case proceeded to trial, and the jury returned a verdict in favor of the plaintiff in the amount of $13,338,606. Post-trial motions filed by the defendants were denied. Thereafter, one of the defendants settled with the plaintiff for an amount that was less than designated in the verdict. The fees associated with the recovery against that defendant are not an issue in this appeal. The fees associated with the judgment amount against the remaining two defendants are an issue, and those two defendants remained ,in the ease through the subsequent appeal to this court. That appeal resulted in an affir-mance, with the exception of a setoff amount this court held should be deducted from the judgment. Janssen Pharm. Prods., L.P. v. Hodgemire, 49 So.3d 767, 773 (Fla. 5th DCA 2010). Following issuance of the mandate by this court, instead of returning to the trial court to obtain a corrected judgment to reflect the setoff deduction, the two defendants agreed to pay the judgment minus the setoff amount and obtain a satisfaction of judgment to end the matter without further court proceedings.
It is at this point that the dispute erupted between Trial Attorneys and Bur *958 lington regarding the provisions of the contract, resulting in both parties filing actions for declaratory judgment and breach of contract. The record reveals that the parties agreed that the specific amount claimed under the contract would be held in trust pending resolution of the case.
Adverting to the provisions of the contract previously quoted, we see the provision that Burlington is entitled to “two and one-half percent (2 1/2%) of the gross recovery if the case is settled after Burlington & Rockenbach, P.A. is requested to take any action in preparation of a response to or drafting a motion for New Trial-” Note the word “settled” because the meaning of that word became the focal point of the arguments presented by both sides in the trial court. Trial Attorneys contended that the case was not settled because there was no voluntary settlement agreement between the plaintiff and defendants that resolved the case: rather, the trial and subsequent appeal resolved the case and the 2.5% fee is therefore owed to Trial Attorneys. Burlington, on the other hand, contended that the word “settled” has a different meaning within the context of the contract. Specifically, Burlington argued the word means resolved or paid instead of a voluntary agreement between the parties.
The trial court held that the fee belonged to Trial Attorneys and that Burlington breached the contract by contending otherwise. The trial court reasoned that the word “settled” means voluntary resolution of the dispute between the parties via a settlement agreement and that a trial with its attendant verdict and judgment does not equate to a settlement agreement. The court also awarded Trial Attorneys prejudgment interest on the contested amount. Burlington appeals, claiming that the trial court misinterpreted, the contract.
As we conduct our de novo review of the contract, we apply well-settled rules of contract interpretation to guide us along the way. See Horizons A Far, LLC v. Plaza N 15, LLC, 114 So.3d 992, 994 (Fla. 5th DCA 2012); Kipp v. Kipp, 844 So.2d 691, 693 (Fla. 4th DCA 2003). The intent of the parties governs contract interpretation and that intent is to be determined from the plain language of the agreement and the everyday meaning of the words used. James v. Gulf Life Ins. Co., 66 So.2d 62, 63 (Fla.1953); Whitley v. Royal Trails Prop. Owners’ Ass’n, Inc., 910 So.2d 381, 383 (Fla. 5th DCA 2005) (“The parties’ intention governs contract construction and interpretation; the best evidence of intent is the contract’s plain language.” (citation omitted)); Kipp, 844 So.2d at 693. Dictionaries are commonly consulted to ascertain the plain meaning of words used in a contract. See Beans v. Chohonis, 740 So.2d 65, 67 (Fla. 3d DCA 1999). The entire contract should be considered and provisions should not be considered in isolation to other provisions in the contract. James, 66 So.2d at 62; Specialized Mach. Transp., Inc. v. Westphal, 872 So.2d 424, 426 (Fla. 5th DCA 2004); Story v. Culverhouse, 727 So.2d 1128, 1130 (Fla. 2d DCA 1999). Finally, the contract should not be interpreted to achieve an absurd result. Specialized Mach. Transp., 872 So.2d at 426; see also Whitley, 910 So.2d at 383 (“The court should reach a contract interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties.” (citation omitted)).
Considering the agreement as a whole, it is clear that the parties intended that Burlington be paid for the services it rendered on both a per hour basis and 2.5% of the gross recovery if the case was “settled” after Burlington performed services at the request of Mr. Taraska in *959 preparation of a response to a motion for new trial. It is not disputed that Burlington did provide those services at the request of Mr. Taraska. The dispute arises over the meaning of the word “settled.”
Earlier versions of Black’s Law Dictionary define the word “settle” as “meaning different things in different connections, and the particular sense in which it is used may be explained by the context or the surrounding circumstances.” Black’s Law Dictionary 1538 (rev. 4th ed. 1968). The most recent edition simply provides many definitions depending on the various circumstances in which “settle” may be used. Two are pertinent to our analysis. ' The first provides that “settle” means “to adjust differences; to come to a good understanding....” Black’s Law Dictionary 1581 (10th ed. 2014). The second provides that “settle” means “to pay (money that is owed); to liquidate a debt....” Id. at 1581.[2] Other dictionaries also provide multiple definitions depending on the circumstances in which the word is used. For example, “settle” is defined as “to pay (a debt)”; “to conclude (a dispute) by final decision”; or “[t]o decide (a lawsuit) by mutual agreement of the involved parties without court action.” The American Heritage Dictionary 1122 (2d Coll. Ed. 1982). Within the context of the entire agreement, and, in particular, the specific paragraph quoted earlier in this opinion, we believe that the word “settled” was not intended by the parties to mean a mutual agreement of the parties that resolves the lawsuit. Rather, we agree with Burlington that it means resolution of the lawsuit by final decision or payment or satisfaction of the judgment previously rendered. Here, the defendants paid the judgment (minus the setoff amount) after this court rendered its opinion and mandate, thus resolving the lawsuit after the final decision was made by this court.
We also agree with Burlington that the interpretation adopted by the trial court and advanced by Trial Attorneys leads to an absurd result. There is no dispute that Burlington performed its trial support duties under the Trial Support Agreement. Therefore, the question presented is whether Burlington is entitled to 2.5% of the recovery from the two remaining defendants. Under the interpretation adopted by the trial court and argued by Trial Attorneys, Burlington would not recover any of the contingency fee for its work unless there was a compromised and negotiated agreement reached between the plaintiff and the two remaining defendants. Thus, despite performing its duties and aiding Trial Attorneys (and the plaintiff) in obtaining a substantial jury verdict, Burlington would not be entitled to the 2.5% fee. Burlington is correct that in order to avoid this absurd result, the definition advanced by Trial Attorneys must be rejected. See Specialized Mach. Transp., 872 So.2d at 426. As the court in James explained:
Every intendment is to be made against the interpretation of a contract under which it would operate as a snare. The inconvenience, hardship, or absurdity of one interpretation of a contract or its contradiction of the general purpose of the contract is weighty evidence that such meaning was not intended when the language is open to an interpretation which is neither absurd nor frivolous and is in agreement with the general purpose of the parties.
James, 66 So.2d at 63-64 (quoting 12 Am. Jur. Contracts § 250 (1936)).
We note parenthetically that even if we were to accept Trial Attorneys’ definition *960 of the word “settled,” Burlington presents an interesting argument that the plaintiff did indeed reach an agreement with the two defendants following the release of this court’s mandate. Burlington points out that the parties did not return to the trial court in order to obtain a corrected judgment after the mandate issued (remember that this court held that a setoff was appropriate, thus reducing the amount of the final judgment). Instead, they agreed that the defendants would pay the judgment minus the setoff amount and obtain a satisfaction of judgment without further court proceedings. Therefore, under the definition of “settled” advanced by Trial Attorneys, Burlington persuasively argues that it would still be entitled to the 2.5% fee for their trial support services. No matter. We do not accept Trial Attorneys’ definition.
The breach of contract issue remains to be considered. In order to prevail in a cause of action for breach of contract, evidence must be presented that establishes: 1) a valid contract; 2) a material breach of the contract; and 3) damages. Murciano v. Garcia, 958 So.2d 423, 423 (Fla. 3d DCA 2007); Abbott Labs., Inc. v. Gen. Elec. Capital, 765 So.2d 737, 740 (Fla. 5th DCA 2000). Trial Attorneys trip and fall over the material breach element. To establish a material breach, the party alleged to have breached the contract must have failed to perform a duty that goes to the essence of the contract and is of such significance that it relieves the injured party from further performance of its contractual duties. Covelli Family, L.P. v. ABG5, L.L.C., 977 So.2d 749, 752 (Fla. 4th DCA 2008); Sublime, Inc. v. Boardman’s Inc., 849 So.2d 470, 471 (Fla. 4th DCA 2003); see also Thomas v. Fusilier, 966 So.2d 1001, 1003 (Fla. 5th DCA 2007). Thus, trivial noncompliance and minor failings do not constitute material breaches. Covelli Family, 977 So.2d at 752. We do not believe that Burlington materially breached the agreement by advancing an interpretation that differed from Trial Attorneys’ interpretation, and we certainly do not believe Burlington materially breached the agreement by advancing an interpretation that we ultimately agreed with. Since there is no evidence that Burlington failed to comply with any of its duties under the contract, the trial court erred in ruling that it breached the contract.
We, therefore, reverse the judgment under review and remand this case to the trial court to enter a judgment declaring Burlington’s entitlement to the disputed fee plus prejudgment interest.[3]
REVERSED and REMANDED.
PALMER and BERGER, JJ., concur.

. The contract was also signed by the client, who is the personal representative of the de *957 cedent’s estate, but the client did not participate in the declaratory judgment and breach of contract action.

. The derivative word "settlement” is similarly defined as "an agreement ending a dispute or lawsuit ...." and "[p]ayment, satisfaction, or final adjustment_" Black's Law Dictionary 1582 (10th ed. 2014).

. Trial Attorneys conceded during oral argument that if Burlington prevailed on appeal, it would be entitled to an award of prejudgment interest. See Lumbermens Mut. Cas. Co. v. Percefull, 653 So.2d 389, 390 (Fla.1995); Fid. & Guar. Ins. Underwriters, Inc. v. Federated Dep’t Stores, Inc., 845 So.2d 896, 903 (Fla. 3d DCA 2003).