WALLIS, J.
*214 Helen Walsh (Wife) appeals the order denying her amended motion for enforcement and contempt sanctions against David Walsh (Husband) and the order denying her motion for attorney's fees. She contends that the trial court erred in several respects, many of which stem from the trial court's misinterpretation of the parties' Marital Settlement Agreement (MSA). Finding the trial court committed numerous errors, we reverse and remand.
In March 2008, Husband and Wife entered into the MSA in order to resolve financial issues related to the dissolution of their long-term marriage. Although Wife raises numerous claims on appeal, the central issue relates to the parties' interpretation of the definitions of the terms "gross income," "periodic income," and "periodic alimony" as used in the MSA.
The MSA states, inter alia :
8. ALIMONY FOR WIFE. The Husband shall pay to the Wife for her support and maintenance as permanent, periodic alimony thirty percent (30%) of the Husband's gross income. Gross income is to be defined as the periodic income that Husband receives as a direct result of his employment efforts, before considering any deferrals and tax affected retirement savings husband may elect to have deducted from his pay. Income that Husband receives as a result of his assets and/or savings that were previously divided with Wife, pursuant to this agreement, or income from any of Husband's new investments and/or savings, after April 26, 2005 or thereafter, are not gross income to be used to determine Wife's future alimony payments .... Husband's business expenses and related reimbursements are not to be considered income to Husband.
....
Payments may be made bi-monthly on the first and fifteenth of the month.
(emphasis added). Additionally, Husband and Wife executed an Addendum to the MSA, which they agreed would control if the Addendum and the MSA were in conflict. Paragraph 1 of the Addendum provides that Husband agrees to pay Wife "periodic alimony in the minimum amount of $2,000.00 per month inclusive of the 30% of Husband's income until she dies or remarries, or cohabitates with another individual per section 3 below." Subsequently, the court entered the Final Judgment dissolving the parties' marriage, which incorporated the MSA and the Addendum by reference.
In March 2017, Wife filed her amended motion for enforcement and contempt sanctions (Motion for Enforcement), claiming Husband violated the Final Judgment by paying Wife alimony based upon his adjusted gross income after deferrals were made. Wife additionally requested that Husband pay her attorney's fees. In response, Husband moved in limine to exclude the admission of parol evidence at the hearing on Wife's Motion for Enforcement, claiming that the language in the MSA is clear and unambiguous when it defines Husband's income and corresponding alimony obligation.
During the hearing on the Motion for Enforcement, the court granted the motion in limine and refused to consider parol evidence, finding that paragraph 8 of the MSA clearly defines the term "gross income." However, the court permitted Wife to proffer a tax code expert's testimony into the record.
After the proffer, Husband provided detailed testimony regarding his compensation structure for his job as a corporate executive. Husband explained that he was subject to different compensation programs *215 that, at times, included base pay, "income deferrals," and the opportunity for performance-based bonuses. He also testified that he routinely paid Wife 30% of his yearly bonuses.[1] According to Husband, he overpaid Wife alimony in the amount of $263,912.10 because he wanted to be cautious, even though he did not believe it was necessary to do so under the MSA. At the hearing, Husband's attorney clearly informed the trial court and Wife that Husband was not seeking a credit for any overpayment of alimony.
After considering the matter, the trial court entered an order denying the Motion for Enforcement and granting the motion in limine to exclude parol evidence. The court specifically found that the MSA and the Addendum are clear and unambiguous and are not subject to attack by parol evidence. The court additionally found that Husband overpaid Wife $263,912.10 in alimony, and that Husband's obligation to pay no less than $2000 per month as stated in the Addendum was exceeded by cumulative alimony payments that he made in 2016. The court, therefore, awarded Husband a credit for his alimony overpayments.
Wife thereafter filed a supplemental motion for attorney's fees and a motion for rehearing. The trial court granted Wife's motion for rehearing solely for the purpose of interpreting the meaning of paragraph 4(D) of the MSA and determining if it controls whether the court may award attorney's fees. Paragraph 4(D) of the MSA reads, inter alia :
A party who fails on demand to comply with this provision or any other obligation contained in this Agreement shall pay to the other party all attorney's fees, costs and other expenses reasonably incurred as a result of that failure or the enforcement of the obligation.
The court ultimately denied Wife's motion for attorney's fees, finding that Paragraph 4(D) was never triggered because Husband did not fail to comply with the requirements of the parties' agreements and, in fact, overpaid his alimony obligation under the MSA.
Wife appeals the order denying the Motion for Enforcement and the order denying her motion for attorney's fees. She specifically claims that the trial court misinterpreted the MSA, improperly excluded parol evidence at the hearing, abused its discretion when it awarded Husband a credit for alimony overpayments against future alimony, and erred when it denied her request for attorney's fees.
A marital settlement agreement is a contract subject to the well-settled principles of contract interpretation. Crawford v. Barker, 64 So.3d 1246, 1255 (Fla. 2011). When interpreting a marital settlement agreement, "the language itself is the best evidence of the parties' intent, and its plain meaning controls." Id. (quoting Richter v. Richter, 666 So.2d 559, 561 (Fla. 4th DCA 1995) ). Courts routinely consult dictionaries to ascertain the plain meaning of words used in contracts. Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker, 160 So.3d 955, 958 (Fla. 5th DCA 2015). "The entire contract should be considered and provisions should not be considered in isolation to other provisions in the contract." Id. The goal of contract interpretation is to arrive at a reasonable interpretation of the text in order to accomplish its stated meaning and purpose.
*216 Am. K-9 Detection Servs., Inc. v. Cicero, 100 So.3d 236, 238-39 (Fla. 5th DCA 2012).
When a contract is unambiguous and clear, it must be interpreted in accordance with its plain meaning. Washington Nat'l Ins. v. Ruderman, 117 So.3d 943, 948 (Fla. 2013). If, however, a contract is reasonably susceptible to more than one interpretation, it is ambiguous. Elias v. Elias, 152 So.3d 749, 752 (Fla. 4th DCA 2014). In that instance, the issue of proper interpretation of the ambiguous contract is a question of fact requiring the submission of extrinsic evidence to show the intent of the parties when the contract was drafted. Id.
Contrary to the court's findings, paragraph 8 of the MSA does not clearly show that the parties intended to exclude from income for alimony calculation purposes "incentive based payments or bonuses" and other types of income. Rather, the definition of "gross income" included in paragraph 8, and, specifically, the term "periodic income" is susceptible to two reasonable interpretations.
For example, the dictionary defines "periodic" as "occurring or recurring at regular intervals" or "occurring repeatedly from time to time." Periodic , Merriam-Webster's Collegiate Dictionary 921 (11th ed. 2012). This definition reveals two reasonable interpretations. First, based on the first portion of the definition of periodic, one reasonable interpretation is that something is periodic when it occurs more than once and at regular intervals. Based on this definition, it is reasonable to find, as the trial court found, that the parties meant for the term "periodic income" to mean only that income that Husband receives at "regular intervals" like base pay, and they meant to exclude other types of income that Husband did not receive on a regular basis or that he usually received but that were not guaranteed income. Second, based on the second part of the dictionary definition of "periodic," another reasonable interpretation of "periodic income" could mean income that Husband received "repeatedly from time to time" like bonuses and incentive pay that he received more than once. Even though the bonuses and incentive pay were not paid at regular intervals, they would still qualify as "periodic income" for purposes of the MSA because Husband received them from "time to time" as a "direct result of his employment efforts."
Because the term "periodic income" is susceptible to two reasonable interpretations, those terms are ambiguous, and the court erred in finding otherwise. See Washington Nat'l Ins., 117 So.3d at 949 ; Elias, 152 So.3d at 752. Accordingly, the parties' intent in drafting that provision was a question of fact that the lower court needed to resolve. See Land O'Sun Realty Ltd. v. REWJB Gas Invs., 685 So.2d 870, 872 n.3 (Fla. 3d DCA 1996). Therefore, the trial court should have allowed the introduction of extrinsic evidence to establish the parties' intent in drafting the MSA as it relates to the definition of "gross income" for purposes of calculating alimony. See Elias, 152 So.3d at 752 ; Land O'Sun, 685 So.2d at 872.
We additionally conclude that the trial court erred when it awarded Husband a credit for his overpayment of alimony because the issue was not raised in the pleadings and it was not tried by consent.[2] See *217 Pro-Art Dental Lab, Inc. v. V-Strategic Grp., LLC, 986 So.2d 1244, 1252 (Fla. 2008) (allowing a court to rule on a matter without proper pleading and notice violates party's due process rights). Therefore, the trial court violated Wife's due process rights when it awarded Husband a credit against alimony in its order on the Motion for Enforcement.[3] ibr.US_Case_Law.Schema.Case_Body:v1">See id.
Finally, we conclude that the trial court erred by denying Wife's request for attorney's fees pursuant to section 61.16, Florida Statutes. As previously explained, marital settlement agreements are governed by contract principles. Mott v. Mott, 800 So.2d 331, 333 (Fla. 2d DCA 2001). A party can waive his right to attorney's fees under section 61.16 in a marital settlement agreement. DeCampos v. Ferrara, 90 So.3d 865, 869 (Fla. 3d DCA 2012). However, such a waiver "depends upon express language to that effect." Id. Here, there is no provision in the MSA that specifically states that the parties waived their right to attorney's fees under section 61.16. Moreover, none of the provisions discussing attorney's fees can be read as an implicit waiver of the right to recover fees pursuant to section 61.16. Because the language of the MSA does not specifically waive the right to pursue fees under section 61.16, it was error for the lower court to deny Wife's motion for attorney's fees without considering her need for fees and Husband's ability to pay. See Caryi v. Caryi, 119 So.3d 508, 511 (Fla. 5th DCA 2013) (finding provision in MSA that stated "[t]he parties shall each be responsible for his or her own attorneys' fees and costs associated with this matter" did not reflect intent by either party to waive right to seek attorneys' fees award in subsequent action); Planes v. Planes, 477 So.2d 42, 42-43 (Fla. 3d DCA 1985) (finding footnote in parties' agreement stating that wife waives "any and all claims that she now has, or may ever have, to ... attorney's fees" does not prevent award of section 61.16 fees in enforcement proceeding).
For the previously explained reasons, we reverse the order denying Wife's Motion for Enforcement and remand so that the trial court can determine the parties' intent regarding alimony when they drafted the MSA. On remand, the trial court shall consider relevant extrinsic evidence offered by the parties regarding their intent in drafting the MSA. Additionally, we remind the trial court that it should not award relief beyond the scope of the pleadings. We finally reverse the order denying Wife's motion for attorney's fees and remand so that the trial court can determine whether it is appropriate to award Wife attorney's fees under section 61.16.
REVERSED and REMANDED with Instructions.
EDWARDS and HARRIS, JJ., concur.

During this litigation, Husband has taken inconsistent positions regarding his bonuses. Although Husband argues on appeal that any bonuses he received throughout his career were neither guaranteed payments nor periodic income as defined by the MSA and the Addendum, he routinely paid Wife 30% of those bonuses.

Normally, Wife's failure to request rehearing on the credit issue would preclude appellate review. See Hall v. Marion Cty. Bd. of Cty. Comm'rs, 236 So.3d 1147, 1153 (Fla. 5th DCA 2018). However, the deprivation of Wife's due process rights was fundamental error that may be raised for the first time on appeal. See id. at 1153-54.

We also note that the trial court erred when it awarded Husband a credit for his overpayment of alimony because there is no evidence from the hearing that: (1) the parties agreed that Husband would overpay Wife alimony in certain years and then receive a credit for that overpayment later; or (2) it would be equitable to award Husband a credit for the overpayment, especially since he deducted those overpayments on his taxes. See Martinez v. Martinez, 383 So.2d 1153, 1155 (Fla. 3d DCA 1980) (finding husband not entitled to a refund of overpayments of alimony where they were voluntarily made and not contemplated as a loan from husband to wife); Hubshman v. Hubshman, 379 So.2d 670, 671 (Fla. 4th DCA 1980) (holding court erred in awarding husband credit toward future alimony where neither party had considered overpayments as advances on future alimony payments and they were more in nature of gifts to wife).