FILED
United States Court of Appeals
Tenth Circuit

August 23, 2024

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

TRU MOBILITY, INC.,

    Plaintiff - Appellant,

v.

BRIGGS AUTO GROUP, INC.,

    Defendant - Appellee.

Nos. 23-3089; 23-3142
(D.C. No. 5:21-CV-04071-JAR)
(D. Kan.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **HOLMES**, Chief Judge, **MATHESON**, and **EID**, Circuit Judges.

_____

Briggs Auto Group, Inc., a car dealership, contracted with Tru Mobility, Inc., a telecommunications service provider, for a 36-month term of service. Tru Mobility later sued Briggs for breach, alleging premature contract termination. The district court granted summary judgment and attorney fees and costs to Briggs.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

### A.  *Factual History*[1]

On January 10, 2017, Briggs signed Contracts A, B, and C ("the Contracts"), to purchase telecommunications services for 36 months and paid Tru Mobility for equipment and first month's service.  On September 10, 2019, Briggs sent Tru Mobility a notice, which expressed a "desire to cancel" so the Contracts would not automatically renew.  App., Vol. 1 at 232.

### B.  *The Contracts*

The Contracts concerned different types and costs of service but were otherwise identical.  *See id.* at 210-31.[2]  Each incorporated an "Addendum to Contracts for Briggs Automotive Group" ("the Addendum") and Tru Mobility's Standard Terms and Conditions ("STC").  *Id.* at 216-19; *id.* at 221-31.  We summarize their key provisions as follows.[3]

---

[1] We draw the facts from the parties' pretrial order stipulation of facts and the parties' statement of uncontroverted material facts at summary judgment.  *See* App., Vol. 1 at 97-98, 113-26, 210-31; App., Vol. 2 at 248-49.

[2] Contract A was for mobile, shared data, tablet, and record services, App., Vol. 1 at 210-11; Contract B for network and colocation services, *id.* at 212-13; and Contract C for voice, additional record, "CRM Integration," call center, and notes services, *id.* at 214-15.

[3] "The law is well established that two or more documents executed by the same parties, at or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract."  *Wilson v. Terwillinger*, 140 So. 3d 1122, 1124 (Fla. Dist. Ct. App. 2014) (quotations omitted) (discussing an addendum to a contract).

1. **Contract Term and Commencement Date**

The Contracts all stated: "The term of this agreement is for 36 months." *Id.* at 210, 212, 214. The STC said the term begins on the "Commencement Date," defined as "the first day of the first bill cycle in which TruMobility bills monthly recurring charges or usage charges." *Id*. at 221. The Contracts did not define "bill cycle." *See id.* at 210-31.

2. **Contract Execution Payment**

The Addendum provided for a payment at contract execution ("the contract execution payment"): "Upon contract execution, equipment and first month[']s charges are due and payable to TruMobility." *Id.* at 218.

3. **Invoicing**

The Addendum also provided that after the contract execution payment, "[n]o additional invoices will be submitted until the service at each location is up and live. Invoices will be issued as each location is activated." *Id.*

A provision in the STC further said: "TruMobility may begin invoicing [Briggs] in full for non-recurring and recurring charges on the later of (1) the date the Products or Services are installed and made available; or (2) the first day of the first bill cycle after the Effective Date." *Id.* at 222. The "'Effective Date' is the date of the Agreement." *Id.* at 221.

4. **Monthly Charges**

The Contracts split charges into a "Monthly Recurring Total" and a "Non Recurring Total." *Id.* at 211, 213, 215. The Monthly Recurring Total was the sum of all

3

monthly charges for various services. *See id.* It included charges for services that would be incurred each month, such as mobile phone plans, internet access, and call recording. *Id.* By contrast, the Non Recurring Total included one-time charges, such as equipment purchases, activation charges, and shipping costs. *See id.*

Each contract stated that Briggs "agrees to . . . Minimum Monthly Charges." *Id.* at 210, 212, 214. The amount listed for "Minimum Monthly Charges" was equal to each contract's Monthly Recurring Total. *Id.* at 210-11, 212-13, 214-15. Contract A listed the Minimum Monthly Charges as $10,205.00, *id.* at 210, and the Monthly Recurring Total as $10,205.00, *id.* at 211. The Minimum Monthly Charges and the Monthly Recurring Total were $15,815.00 for Contract B, *id.* at 212-13, and $5,900.00 for Contract C, *id.* at 214-15. The Addendum defined minimum monthly charges for Contracts A and C as "the total of the services" listed in each contract "which [Briggs] requests and TruMobility places into service." *Id.* at 216-17.

5. **Contract Termination and Early Termination Fees**

Once the 36-month term had run, the STC provided that the Contracts would automatically renew "unless [Briggs] provides TruMobility with not less than ninety (90) days written notice prior to the end of the then current Term." *Id.* at 221. But if Briggs ended the Contracts "before the end of the applicable Term," it had to pay an early termination fee. *Id.* at 227. The fee would be $1,000 if Briggs terminated the Contracts before Tru Mobility activated services. Otherwise, the fee would be "all outstanding nonrecurring fees" plus "100% of the Monthly Fees for each month remaining in the initial term and any extensions or renewals." *Id.*

4

*    *    *    *

In sum:

- The 36-month term started on the Commencement Date. *Id.* at 221.

- The Commencement Date was "the first day of the first bill cycle in which TruMobility bills monthly recurring charges or usage charges." *Id.*

- Charges were split into a Monthly Recurring Total and a Non Recurring Total. *Id.* at 211, 213, 215.

- All monthly charges were part of the Monthly Recurring Total. *Id.*

- Briggs agreed to purchase Minimum Monthly Charges, which were equal to the Monthly Recurring Total. *Id.* at 210-11, 212-13, 214-15.

- At contract execution on January 10, 2017, Briggs would pay the "first month[']s charges." *Id.* at 218.

- After that payment, Tru Mobility could submit additional invoices to Briggs only when it had installed equipment and activated services. *Id.*

As discussed below, the parties' dispute turns on when the Contracts commenced. Briggs contends the Commencement Date was January 10, 2017, when it executed the Contracts and paid the first month's charges. Tru Mobility argues that the contract execution payment was an advance and that the Commencement Date occurred each time it activated a service. We must therefore determine whether Briggs's payment of the first month's charges triggered the 36-month term.

5

C. *Procedural History*

Tru Mobility sued Briggs in Kansas state court. Briggs timely removed the case to the United States District Court for the District of Kansas. Tru Mobility alleged breach of contract, claiming that Briggs cancelled the Contracts before the 36-month term expired and therefore owed Tru Mobility an early termination fee. Briggs answered and filed five counterclaims, which it later dismissed.[4]

Briggs moved for summary judgment, arguing it did not breach the Contracts because (1) the 36-month term commenced on January 10, 2017, and expired on January 9, 2020; and (2) it provided written notice more than 90 days in advance to ensure the Contracts would not renew.[5]

Tru Mobility responded that the 36-month term started on "the actual dates when services began," that it activated services to Briggs on different dates, and "[i]t was not until June 2018 that . . . all contracted services commenced." App., Vol. 2 at 252.[6]

---

[4] Briggs's dismissal of its counterclaims without prejudice raised concerns about finality and our appellate jurisdiction. *See Heimann v. Snead*, 133 F.3d 767, 769 (10th Cir. 1998) (per curiam) (counterclaims dismissed without prejudice may mean a judgment is not final). We ordered supplemental briefing on this issue. In response, the parties stipulated in district court to convert the dismissal to one with prejudice, which resolved our concerns.

[5] On appeal, the parties agree that the Contracts were executed on January 10, 2017. Aplt. Br. at 5; Aplee. Br. at 13.

[6] Although Tru Mobility argued that the 36-month term began on "the actual dates when services began," App., Vol. 2 at 252, it has not identified those "dates" on appeal.
Before the district court, Tru Mobility listed in its damages calculation (1) each service that it provided, (2) when it activated that service, and (3) how many months remained until that service had been active for 36 months. *See id.* at 282-83. Tru

It asserted that Briggs owed $398,485 in early termination fees, which it calculated by (1) subtracting from 36 months how long each service had been active when Briggs said the Contracts' term ended, (2) multiplying the resulting number of months by the monthly cost of that service, and (3) summing the totals for all services. *See id.* at 251-52, 282-83.

The district court granted summary judgment to Briggs. It said the contractual language regarding "the start date of the 36-month term" was "unambiguous." App., Vol. 3 at 529. The court noted contract execution was on January 10, 2017. *Id.* at 530. It then based its decision on three contract provisions, *id.* at 529-30:

- The Contracts' "term begins on the Commencement Date." App., Vol. 1 at 221.

- The "Commencement Date is the first day of the first bill cycle in which TruMobility bills monthly recurring charges or usage charges." *Id.*

- "[F]irst month[']s charges are due and payable to" Tru Mobility upon contract execution. *Id.* at 218.

The district court "f[ound] the clear and unambiguous meaning of these provisions to be: (1) the contracts' terms began on the 'Commencement Date'; (2) the

---

Mobility then calculated its alleged damages by multiplying those additional months by the monthly cost of each service and totaling the amount for all the services. *See id.*

Tru Mobility thus argued that each service had its own Commencement Date tied to when each was activated. *See id.* at 251-52, 282-83. The district court rejected this reading of the Contracts.

We limit our review to this argument. To the extent Tru Mobility attempts to present an argument on appeal that it did not present in district court, it has waived that argument for failure to show plain error. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011).

'Commencement Date' is the first day that [Tru Mobility] billed [Briggs]; and

(3) [Tru Mobility]'s first bill to [Briggs] was on the day the contracts were executed."

App., Vol. 3 at 530.  It also said the Contracts foreclosed Tru Mobility's argument that

the 36-month term was meant to run "from the date of activation of each individual

service." *Id.*  The court therefore concluded Briggs "did not terminate the contracts early

and, therefore, did not breach the contracts by failing to pay the early termination fees

[Tru Mobility] demanded." *Id.* at 531.

The district court also awarded $137,401.52 in attorney fees and costs to Briggs.

*Id.* at 577-89.  Tru Mobility timely appealed.[7]

## II.  DISCUSSION

Tru Mobility argues that the district court erred in granting summary judgment to

Briggs and in awarding attorney fees and costs.  We disagree.

### A. *Summary Judgment*

1. **Legal Background**

a. *Standard of review*

"We review contract disputes and grants of summary judgment to a defendant de

novo." *Monarch Casino & Resort, Inc. v. Affiliated FM Ins. Co.*, 85 F.4th 1034, 1038

(10th Cir. 2023).  "[T]he court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  "If there is no genuine issue of material fact,

---

[7] Tru Mobility appealed the summary judgment ruling in 23-3089 and the attorney fees and costs award in 23-3142.  This court consolidated the appeals.

then the reviewing court must determine if the district court correctly applied the law."

*Timmons v. White*, 314 F.3d 1229, 1232 (10th Cir. 2003).

    b.  *Choice of law*

"In a diversity action, we apply the substantive law of the forum state, including

its choice of law rules." *Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*, 431 F.3d

1241, 1255 (10th Cir. 2005), *as amended on reh'g in part* (Apr. 11, 2006). Here, Kansas

is the forum state and "Kansas choice of law rules honor an effective choice of law by

contracting parties." *Id.*

    The Contracts included a choice of law provision, stating they would "be governed

by the laws of the state of Florida." App., Vol. 1 at 231. The parties agree this choice-of-

law provision governs. *See* Aplt. Br. at 25; Aplee. Br. at 6-7. We therefore apply Florida

law to this appeal. *See McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1143 (10th Cir. 2023).

    To determine applicable Florida law, we look to "the most recent decisions of the

state's highest court." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th

Cir. 2007). If no controlling decision exists, we must "attempt to predict how the highest

court would interpret the issue," *Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1164

(10th Cir. 2019) (quotations omitted), by considering sources such as the state's appellate

court decisions and federal court decisions interpreting the forum state's law, *see Wade*,

483 F.3d at 666.

    c.  *Contract interpretation under Florida law*

"Where the terms of a contract are clear and unambiguous, . . . the language itself

is the best evidence of the parties' intent, and its plain meaning controls." *Crawford v.*

9

*Barker*, 64 So. 3d 1246, 1255 (Fla. 2011) (quotations omitted); *see also MDS (Can.) Inc. v. Rad Source Techs., Inc.*, 143 So. 3d 881, 890-91 (Fla. 2014).  "[A] true ambiguity does not exist in a contract merely because the contract can possibly be interpreted in more than one manner."  *Pial Holdings, LTD v. Riverfront Plaza, LLC*, 379 So. 3d 547, 551 (Fla. Dist. Ct. App. 2024) (alterations and quotations omitted).

When interpreting a contractual term, we first examine "the context of the contract as a whole to determine whether the parties agreed to give [the term] a meaning other than the one ascribed to it in general usage."  *Parrish v. State Farm Fla. Ins. Co.*, 356 So. 3d 771, 774 (Fla. 2023); *see also Garcia Granados Quinones v. Swiss Bank Corp. (Overseas), S.A.*, 509 So. 2d 273, 275 (Fla. 1987).  "[W]here one interpretation . . . would be absurd and another would be consistent with reason and probability, we will interpret the contract in the rational manner."  *Pial Holdings*, 379 So.3d at 551.  Further, we give effect to all contract provisions if "reasonably" possible to do so.  *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) (quotations omitted).

2. **Analysis**

We conclude that the 36-month term began on January 10, 2017, when the Contracts were executed.  Because Briggs gave proper notice that it did not want the Contracts to renew, the Contracts expired in January 2020—36 months after they were executed.  Briggs did not terminate the Contracts prematurely and did not breach.  The district court properly granted summary judgment.

The parties agree the Contracts are "unambiguous."  Aplt. Reply Br. at 17; Aplee. Br. at 5; Oral Arg., No. 23-3089, at 9:15–9:25 (Tru Mobility's counsel:  "I think all

parties agree with the district court on that; that [the Contracts] [are] not ambiguous."). Thus, "the language" of the Contracts "is the best evidence of the parties' intent, and its plain meaning controls." *Crawford*, 64 So. 3d at 1255 (quotations omitted).

The parties also agree "the Term beg[an] on the Commencement Date," App., Vol. 1 at 221, which the STC defined as "the first day of the bill cycle in which TruMobility bills *monthly recurring charges* or usage charges," *id.* (emphasis added).[8] But the parties dispute when that occurred. Aplt. Br. at 22-36; Aplee. Br. at 15-21. We agree with Briggs and the district court that the Commencement Date was January 10, 2017, the day the parties executed the Contracts. As we explain below, under the Contracts, the first month's charges were monthly recurring charges.

Contracts A, B, and C each listed the services and products that Tru Mobility would provide and the corresponding dollar amounts that Briggs would pay. Each charge was assigned to one of two payment categories: the Monthly Recurring Total or the Non Recurring Total. App., Vol. 1 at 211, 213, 215. Because the Monthly Recurring Total was the total of all the charges that would recur each month, such as internet access or phone service, all monthly charges were part of the Monthly Recurring Total. *See id.* Any charge that was part of the Monthly Recurring Total was therefore a monthly

---

[8] The district court said that Tru Mobility "billed" Briggs for the contract execution payment and that Tru Mobility's "first bill to [Briggs] was on the day the contracts were executed." App., Vol. 3 at 530. Tru Mobility does not dispute this statement, nor could it: Tru Mobility must have provided Briggs a list of charges for Briggs to know what it needed to pay for the contract execution payment. *See Bill*, Black's Law Dictionary (12th ed. 2024) ("An itemized list of charges.").

recurring charge.  The Non Recurring Total was the total of one-time charges, such as equipment.  *See id.*

Thus, just as the equipment charge that Briggs paid at contract execution must have been part of the Non Recurring Total payment category, the first month's charges must have been part of the Monthly Recurring Total.  The first month's charges due at contract execution were therefore monthly recurring charges.  Briggs's contract execution payment on January 10, 2017, satisfied the Commencement Date definition and triggered the 36-month term.

Tru Mobility's counterarguments are not persuasive.[9]

First, Tru Mobility argues the contract execution payment was only an "advance of the first month's fee," not a "'monthly recurring charge.'"  Aplt. Br. at 23.  It points to the Addendum, which stated that after the contract execution payment, "[n]o additional invoices will be submitted until the service at each location is up and live" and that additional invoices "will be issued as each location is activated."  *Id.* at 34-35 (quoting App., Vol. 1 at 218).  Tru Mobility contends that because the contract execution payment of "first month's charges" was a one-time payment, it was not a recurring payment as part of a bill cycle.  Aplt. Reply Br. at 9 (quotations omitted).  The payment therefore did not trigger the start of the 36-month term.  Aplt. Br. at 23-24; *see also* Aplt. Reply Br. at 2-3.  The dissent takes a similar position.  Dissent at 1-2.

---

[9] Tru Mobility did not develop the following counterarguments as part of its commencement-at-service argument in district court.  But read generously, they are sufficiently related to that argument for our consideration here.

This argument ignores the Contracts' use of the term Monthly Recurring Total to describe one of two categories of charges. As explained above, the monthly charges, including the contract execution payment for the first month, were part of the Monthly Recurring Total. App., Vol. 1 at 211, 213, 215. Even if the first month's payment was an advance, it was still a payment for recurring monthly charges that Briggs would incur in a future month. Thus, when Briggs paid the "first month[']s charges" on January 10, 2017, *see id.* at 218, it paid "monthly recurring charges," *see id.* at 221.

Second, Tru Mobility argues the contract execution payment "plainly was not part of the bill cycle in which Tru Mobility bills monthly recurring charges." Aplt. Br. at 23-24 (alterations and quotations omitted). But, as explained above, the first month's charges were monthly recurring charges billed (or invoiced) to Briggs. This aligns with the Addendum's statement that after the contract execution payment, Tru Mobility cannot submit "*additional* invoices . . . until the service at each location is up and live." App., Vol. 1 at 218 (emphasis added). The Contracts never defined "bill cycle," and Tru Mobility fails to explain how the first month's payment of monthly recurring charges could be made in response to a bill but not be part of a bill cycle.

Third, Tru Mobility argues that if the contract execution payment triggered the Commencement Date, the 36-month term would be "meaningless" because Tru Mobility "could never recoup" the full value of the Contracts, which Tru Mobility defines as 36-months' worth of the Minimum Monthly Charges, set at $10,205 a month for Contract A, $15,815 for Contract B, and $5,900 for Contract C. Aplt. Br. at 33, 35-36. Because the STC stated that Tru Mobility cannot "begin invoicing [Briggs] in full for non-

recurring and recurring charges . . . [until after] the Products or Services are installed and made available," App., Vol. 1 at 222, Tru Mobility argues it would not receive 36 months of payment of Minimum Monthly Charges if the Commencement Date preceded equipment installation and service activation.[10]

This argument fails because Tru Mobility wrongly assumes the 36-month term entitled it to a set revenue amount—calculated by multiplying the Minimum Monthly Charges by 36. Contracts A and C both noted the "minimum monthly" charges could change based on the services Tru Mobility had actually activated. *See id.* at 216-17. Briggs thus had no obligation to purchase the full Monthly Minimum Charges for 36 months. The Contracts also stated that Tru Mobility could invoice Briggs "*in full* for . . . recurring charges" once "the Products and Services are installed and made available." *Id.* at 222 (emphasis added).

Finally, tying the Commencement Date to each commencement of service, as Tru Mobility proposes, runs counter to a reasonable understanding of the parties' intent and would potentially render the Contracts "absurd." *See Pial Holdings*, 379 So. 3d

---

[10] The dissent invokes the STC's language permitting Tru Mobility to invoice "in full for . . . recurring charges" once "the Products and Services are installed and made available." Dissent at 1-2 (quoting App., Vol. 1 at 222). Thus, the dissent says, "recurring charges may commence no earlier than *after* the activation of services." *Id.* But the STC defined the Commencement Date as "the first day of the first bill cycle in which TruMobility bills monthly recurring charges or usage charges"—not when True Mobility could bill monthly recurring charges *in full*. App., Vol. 1 at 221. Under the Addendum, "Upon contract execution," the "first month[']s charges" were "due and payable to TruMobility." *Id.* at 218. And as discussed above, the first month's charges were monthly recurring charges, whether or not they were the full amount that eventually could be charged.

at 551.  Under Tru Mobility's reading, the Commencement Date would differ, depending on the timing of equipment installation and service activation.  And if services within the same contract went live at different times for different products and locations, the same contract could have multiple 36-month terms.

The Contracts contained no language suggesting the parties intended a multiplicity of commencement dates.  Instead, the STC referred to the "Commencement Date," not multiple dates, App., Vol. 1 at 221, and the Contracts referred to a single 36-month "term," not multiple 36-month terms, *id.* at 210, 212, 214.  An Addendum provision stated that "[a]ny new or future executed contracts will terminate on the same date as the original contracts," indicating the parties' intent for the Contracts' 36-month term to commence, and therefore end, on the same date.  *Id.* at 217; *see also id.* at 97.[11]  If the Contracts allowed for multiple Commencement Dates, a future executed contract could not terminate on the same date as the original contracts because the original contracts would terminate at different times.  Only Briggs's reading allows us to give full effect to

---

[11] The provision further stated:  "If a product or service is added [that] does not terminate at the same time [as the original contracts,] Briggs will acknowledge the same at the time of that contract signing."  App., Vol. 1 at 217.  Contrary to the dissent's argument that this provision "contemplate[d] that contract termination dates may not always align," Dissent at 4, it instead evinced that "new or future executed contracts" may have termination dates that do not always align with those in the original Contracts, not that termination dates in the original Contracts may differ, App., Vol. 1 at 217.  As the dissent acknowledges, new or future contracts must "note the discrepancy" if this occurs.  Dissent at 4.  None of the original Contracts "note[d] [a] discrepancy" in termination date.  *Id.*  This provision therefore supports that the Contracts terminated on the same date.

and "create harmony" between all contract provisions.  *City of Homestead*, 760 So. 2d at 84.

\*    \*    \*    \*

Because Briggs paid "monthly recurring charges" at contract execution, the Commencement Date was January 10, 2017.  We affirm the district court's grant of summary judgment.

### B.  *Attorney Fees and Costs*

The Contracts included the following provision:  "The prevailing party in any litigation and/or arbitration arising from or related to this Agreement shall be entitled to recover from the non-prevailing party all reasonable attorneys' fees and costs incurred in the litigation and/or arbitration."  App., Vol. 1 at 231.

Tru Mobility argues the district court erroneously granted Briggs attorney fees and costs because Briggs should not have been the prevailing party below.  Aplt. Br. at 38; Aplt. Reply Br. at 18.  It does not dispute that the Contracts entitle the prevailing party to attorney fees and costs or otherwise challenge the award.  Because we affirm the district court's grant of summary judgment, Briggs remains the prevailing party.  We thus affirm the district court's grant of attorney fees and costs.

## III. **CONCLUSION**

We affirm the district court's grant of summary judgment and its award of attorney fees and costs.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

Nos. 23-3089; 23-3142, *Tru Mobility v. Briggs Auto Group*

**EID**, J., dissenting.

The majority reasons that the contract execution payment was the first monthly recurring charge because "the first month's charges could have been part of only the Monthly Recurring Total." Maj. Op. at 12. But another part of the contract, the Standard Terms and Conditions ("STC"), plainly defines when recurring charges may commence—after the activation of services. We need not engage in the majority's chain of inferences to deduce the meaning of the "first month's charge" due at contract execution because the STC already informs us that the payment is not a recurring charge. I respectfully dissent.

Applying Florida law here,[1] we must enforce the contract pursuant to its plain language when the contract is "clear and unambiguous." *Hahamovitch v. Hahamovitch*, 174 So. 3d 983, 986 (Fla. 2015). We give words their plain meaning and "rely upon the rule of construction requiring courts to read provisions of a contract harmoniously in order to give effects to all portions thereof." *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000).

The STC states that "TruMobility may begin invoicing Customer in full for non-recurring and recurring charges on the later of (1) the date the Products or Services are installed and made available; or (2) the first day of the bill cycle after the Effective Date."

---

[1] As the majority recognizes, Florida law governs this diversity contract dispute. Maj. Op. at 9.

App'x Vol. 1 at 222. The language of the STC is plain—recurring charges may commence no earlier than *after* the activation of services. It is thus of no consequence whether the first month's charge equaled the Monthly Recurring Total that Briggs would pay in future. Because the payment occurred prior to the activation of services, it was by definition non-recurrent.

The majority briefly acknowledges the STC but proceeds to render meaningless its clear and unambiguous language. Maj. Op. at 13–14. Yet it is possible to reasonably give effect to all provisions in the Contracts. The Contracts never state that the first month's charge is recurrent; I am more persuaded than the majority that the entire agreement can be read in harmony while understanding that the charge was non-recurrent.

In reaching its conclusion, the majority places great weight on the Contracts' use of the word "month" and "Monthly Recurring Total." In the majority's eyes, because the first month's charge is the same amount as the Monthly Recurring Total, and will later be applied toward a recurring billing cycle, the charge is recurring.[2]  *See* Maj. Op. at 13. At first glance the language "first months [sic] charges are due and payable" may indicate that the payment is the first recurring payment—a month's charge indicates that another

---

[2] The majority also places emphasis on the "in full" language in the STC. Maj. Op. at 14 n.10. But the payment made upon execution of the Contracts was also a complete month's payment. Because Briggs did not make a partial payment at contract execution or elsewhere, there is no indication that "in full" differentiates the payments. The "in full" language therefore does not render the execution payment the first recurring charge.

2

charge will occur next month, and a "monthly" payment is a payment that occurs at twelve regular and repeated intervals per year.   App'x Vol. 1 at 218.  But this is not the case for two reasons.  First, the majority's logic fails to account for the STC.  Simply because the first month's charge would eventually be applied in a recurring billing cycle, *see* Maj. Op. at 13, or because the charge equaled the Monthly Recurring Total, *see id*. at 12, does not obviously render the payment a recurring charge.  In a world in which the STC did not exist, I agree that the nature of the first payment would be open for debate.  But the STC provides a clear answer.  Second, the same term in the Contracts that provides for the contract execution payment specifies that no additional invoices will issue until services are activated.  *Id*.  This limiting language indicates that the first month's charge may be non-recurring because there will be no other charges for an indeterminate amount of time.  The time until the second charge is contingent and indeterminate.

The majority also correctly points out that had the Commencement Date occurred each time Tru Mobility activated a service, the parties would have become entangled in a web of dozens of different Commencement Dates, each with their own term expiration.  Maj. Op. at 15.  The majority continues that "[t]he Contracts contain no language indicating the parties intended a multiplicity of commencement dates," *id*., and points to language in the Contracts that "[a]ny new or future executed contracts will terminate on the same date as the original contracts," *id*. (citing App'x Vol. 1 at 217).  The Contracts may not contain language that indicates whether the parties contemplate multiple

3

commencement dates. But the Contracts *do* contain language that defines when recurring payments could begin. Further, the Contracts provide that future products or services may terminate at different times, in which case a future contract would note the discrepancy. App'x Vol. 1 at 217. This provision contemplates that contract termination dates may not always align.

It is "never the role" of the court to "in the guise of interpretation, relieve a contracting party from the consequences of a bad bargain." *Famiglio v. Famiglio*, 279 So. 3d 736, 740 (Fla. Dist. Ct. App. 2019) (internal citations and quotation marks omitted). The majority's opinion relieves Briggs from the consequences of a bad bargain at the expense of the plain language of the parties' agreement. Accordingly, I would reverse the district court's grant of summary judgment and remand for further proceedings. I would also remand the second case in this consolidated appeal, No. 23-3142, which concerns the attorneys' fees and costs. Because Briggs should not have prevailed on summary judgment, it should not have been awarded attorneys' fees and costs. I respectfully dissent.